Hurst JOHN, Plaintiff-
Appellant-Respondent,

v.

Howard TURNER et al.,
Defendants-Appellants.

Nos. KCD 27229, KCD 27373.

Missouri Court of Appeals,
Kansas City District.

Aug. 30, 1976.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 12, 1976.

Warren D. Welliver and William A. Atkinson, Welliver & Simon, Columbia, for appellants Carl H. Almond and Nancy G. Almond.

J. Turner Jones, George D. Nichols, Jones, Knight & Ford, Columbia, for appellant-respondent Hurst John.

Milt Harper, Columbia, for respondent Boone County.

Before TURNAGE, P. J., and WELBORN and Higgins, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Action by Hurst John to quiet title to 80 acres of real estate, encompassing tracts designated in evidence as "Tract A" and "Tract B." Title was quieted in favor of plaintiff against all defendants except to Tract A which was quieted in the County Court of Boone County. Appeal (27,229) by Hurst John from that part of the judgment quieting title to Tract A in the county court, combined with appeal (27,323) by Carl and Nancy Almond from that part of the judgment denying their claim of title to Tract B. Title to the 80 acres is not otherwise in dispute. In 27,229 the questions are whether the court erred in denying Hurst John's claim of title to Tract A by adverse possession; whether the county court acquired any interest in Tract A; if so, whether such interest was abandoned; whether the decree affecting Tract A is void for vagueness and beyond the pleadings; and whether the county court was estopped to claim any interest in Tract A. In 27,323 the question is whether the court erred in granting Hurst John's claim of title to Tract B by adverse possession. Affirmed.

Plaintiff Hurst John alleged he was the owner of and sought to quiet the title in himself to certain land in Boone County:

Eighty (80) acres, the East half of the Northwest Quarter of Section 29, Township 47 North, Range 12 West.

Defendant County Court of Boone County alleged it was the owner of and sought to quiet title in itself to a portion of the 80 acres claimed by Hurst John, designated in evidence as "Tract A":

One half (½) acre of ground lying North of the County road and on which Tumbling Spring is located which land is situated in the Southeast corner of the Northwest Quarter of Section 29, Township 47 North, Range 12 West.

Defendants Almond alleged they were the owners of and sought to quiet title in themselves to a portion of the 80 acres claimed by Hurst John, designated in evidence as "Tract B":

All that portion of the Northeast Quarter of the Northwest Quarter of Section Twenty-nine (29); Township Forty-seven (47) and Range Twelve (12) lying North and West of a certain creek in a Southwesternly direction through said Northeast Quarter of said Northwest Quarter of said Section 29.

Prior to February 15, 1893, Howard Turner was the owner of certain land in Boone County:

Forty acres, the Northeast Quarter of the Northwest Quarter of Section Twenty-nine all in Township Forty-seven (47) Range Twelve (12).

Mr. Turner's 40 acres comprises the north half of the 80 acres claimed by Hurst John and encompasses Tract A. On February 15, 1893, Howard Turner and Mary Louise Turner, his wife, conveyed by warranty deed to Henry Turner, "party of the second part":

Forty acres more or less the Northeast Quarter of the Northwest Quarter of Section Twenty-nine, Township Forty-seven (47) and Range Twelve (12) except what is hereinafter reserved viz: One half of one acre more or less of said above described premises situated in the Southeast corner thereof and includes and takes in a certain large spring situated at said point and will at all times keep and maintain a good and substantial fence one half way around said spring and the said party of the second part hereby binds himself and assigns forever to keep and maintain a good and substantial fence around the other half of said spring.

On January 5, 1937, title to the entire 80 acres was quieted in O. R. Johnson against Martha Turner and others; Howard Turner was not a party to the action.

On March 11, 1940, O. R. Johnson and Ruth P. Johnson, his wife, by warranty deed to Hurst John conveyed the 80 acres, "Reserving the right of ingress and egress to a spring located in the north part of said tract as originally reserved in a deed from Howard Turner and Mary Louise Turner, his wife, to Henry Turner, dated February 10, 1893." The quoted reservation was also made by Mr. John in his deed of trust of the same date.

On March 11, 1941, Howard Turner executed a will which provided for a life estate in his wife, Mary Louise Turner, and certain remainders, one of which provided:

I give and bequeath One Half (½) acre of Ground lying North of the County Road and on which Tumbling Spring is located to the County Court of Boone County, in trust and never to be sold and to be used by the Public under the County Court's supervision.

On September 28, 1945, Howard Turner died. His will was admitted to probate. An "Inventory, Appraisements and Affidavits" was filed by the administrator with will annexed, which included certain real estate, none of which is in question in this suit. Mary Louise Turner died January 11, 1946.

Murry E. Glascock, County Clerk of Boone County, searched records of the county court from 1944 to 1951 and found no acceptance or rejection of a devise of land from Howard Turner, no resolution pertaining to the spring, and no records indicating supervision or dominion over Tumbling Spring.

With respect to Tract A, plaintiff testified: After he purchased the 80 acres in 1940, the old county road which ran across the 80 acres in a southeasterly-northwesterly direction was not traveled by the public, and he secured permission from the county court to place signs at each end advising the road was not passable. There was also a private road from the county road to the spring area. In 1949 he corresponded with James A. Turner, son of Howard and Mary Louise Turner, to suggest that a bronze plaque be placed near the spring as a memorial to Mr. and Mrs. Turner. The letter described the suggested memorial, stated the need of pictures, and concluded, "Then I would give this to the County Court for consideration." In taking title to the 80 acres, he knew of the reservation of the spring and, in 1949, he was aware of Howard Turner's devise to the county court of the spring and surrounding one-half acre. Between 1949 and 1953, he asked the county court about its intentions with respect to the spring property, after which he commenced certain improvements. In 1953 he took care of the spring property; the county court had done nothing about it. He cleared the spring area of underbrush and trash. He fenced the "toasters," a pair of deep vertical slots in the ground, each 30 to 40 feet long, 4 to 5 feet wide, about 6 feet apart, between which the spring could be observed, and did other fencing in 1953. He leased the 80 acres to Jim Cunningham for farming in the early years, Mr. Tusler for pasture in 1953, and to the Peace Corps as a training site in the early 1960's. He grazed the land in other years prior to 1953 and since 1953, except for the lease to the Peace Corps. In 1954, he had the valley area surveyed in preparation for plans to utilize the spring water for diversion into commercial fish ponds. In that year he built a pond or "lake" some seventy-five feet below the outlet of the spring. A gate was put across the county road at his property line on the east with a "no trespassing" sign on it. About a hundred similar signs were placed elsewhere on the farm. He did not allow anyone to use the property without his permission. In the late 1950's he cut timber off the spring area two or three times. During the 1950's the public did not come to the area, and he and his family used it for picnics and recreation, which included horseback riding. In 1968 he built a cabin near the spring which his son used during summer months. In 1965 or 1966 he removed ten loads of rock from the "spring proper," which was to reduce contamination and permit the spring to run cleaner. He found barbed wire on two trees which indicated an old fence at a point along the private road between the spring outlet and the "toaster." The timber cut in the spring area was above the toaster, 150 feet from the spring outlet. Plaintiff paid all taxes assessed against the 80 acres following his acquisition of the property. Where the water comes out from solid rock is in the toaster; surface water draining into the toaster then combines with spring water and flows through a rock bridge to the spring outlet, where water is accessible to people.

On April 8, 1936, Russell E. Holloway took title to Tract B. The decree of January 5, 1937, quieted title to the entire 80 acres, including Tract B, in O. R. Johnson. Mr. Holloway was not a party to the suit, and there is no evidence that he ever conveyed Tract B. Mr. Holloway died testate February 22, 1963, and there is no evidence of disposition by his will of Tract B.

On October 31, 1968, Carl and Nancy Almond acquired from William Brynjulfson and Pearl E. Brynjulfson, husband and wife, various tracts lying north of Tract B.

On February 4, 1972, Mr. and Mrs. Almond received a quitclaim deed to Tract B from Geraldine Shobe Holloway; there is no evidence that she ever acquired any interest in Tract B from Russell Holloway.

William Brynjulfson was "pretty much" familiar with Tract B. A fence running east and west between his lands to the north of Tract B and Tract B was "pretty presentable" as early as 1956 or 1957, and there was no access from his property to Tract B because there was no gate or gap in the fence. He never claimed Tract B as a part of the farm now owned by Mr. and

Mrs. Almond by virtue of his deed to them October 31, 1968. Mr. Brynjulfson farmed the land with Mr. John for a number of years; he knew of no use made of Tract B by Mr. John during the time he owned the adjacent lands. He had never seen animals grazing Tract B other than his own.

With respect to Tract B, plaintiff testified: After he purchased the 80 acres in 1940, no one protested his use of Tract B or made claim to it. He had ridden horses over all of it. There is a fence along the north boundary of the 80 acres separating it from land on the north owned by Mr. and Mrs. Almond. It had been repaired by Peak and Dodd who owned the property to the north of the 80 acres prior to 1956 when they sold it to Mr. Brynjulfson. The taxes which he paid on the 80 acres were on bills which did not show Tract B taxed separately. He cut timber off Tract B on two or three occasions prior to 1960, and grazed animals on his entire ownership including Tract B.

James Turner, son of Howard Turner, was present in 1940 when Hurst John offered his father, Howard Turner, $50 for the spring in issue. His father did not sell. Plaintiff denied he made the offer of purchase. Mr. Turner understood the exception and reservation of the spring in the deed of February 15, 1893, as the result of an agreement between Howard Turner and Henry Turner by which Howard "would get half an acre around the spring, so he could always go get water for the stock and for his own use." His father claimed ownership of the spring and one-half acre surrounding it until his death. His father went to the spring and spent time there. Others had used the spring during the life of Howard Turner. He visited the spring September 29, 1945, the day after his father's death, and found the hillside around the spring clear of trees except for sprouts and two large trees. Herb Gilpin had cleared the hillside. The old county road was open and passable. The spring is where "you can walk up into this cave a bit and dip your water out." He referred to the "toaster" as "some holes up there in the branch."

The court's findings in resolution of the issues raised by the foregoing are contained in the court's "Memorandum Decision":

" * * * With reference to Tract 'A' which is the tract containing Tumblin Springs, the 1893 deed from Howard Turner to Henry Turner conveyed certain real property which subsequently by Warranty Deed passed into the hands of Plaintiff. The sole question presented is whether either as a result of that Deed or as a result of Howard Turner's Will, a one-half acre tract was reserved to Boone County, there being no claim by any other person to title to this property by adverse possession.

"In the Deed from Howard Turner to Henry Turner, certain real estate was conveyed ' * * * except what is hereinafter reserved, one-half of one acre, more or less, of said above described premises situated in the South East corner thereof and includes and takes in a certain large spring situated at said point * * *.' Likewise, in the Last Will and Testament of Howard Turner which was executed on the 11th day of March, 1941, and which was probated in October 1945, Mr. Turner again makes reference to the spring as follows:

" 'I give and bequeath one-half (½) acre of ground lying North of the County Road and on which Tumblin Spring is located to the County Court of Boone County, in trust and never to be sold, and to be used by the public under the County Court's supervision.'

" * * * in the Deed from Plaintiff's predecessor in title, O. R. Johnson, to Plaintiff * * *, there is again a reference to the spring as follows:

" ' * * * Reserving the right of ingress and egress to a spring located in the North part of said tract as originally reserved in a Deed from Howard Turner and Mary Louise Turner, his wife, to Henry Turner, dated February 10, 1893.'

"The Plaintiff by trustee deed executed in 1940 likewise makes reference to the

spring and the reservation of right to ingress and egress.

" * * * there was * * * a letter from the Plaintiff to Howard Turner's son, Jim A. Turner, making reference to a monument to be erected in memory of Howard Turner at the spring.

"It was clearly the intention of Howard Turner to reserve both, by the warranty deed in 1893, the spring and the ground surrounding same and subsequently by his Will to convey same to the County Court of Boone County. Accordingly, the Court holds and finds that Plaintiff's predecessor in title, Howard Turner, reserved one-half acre on which was located Tumblin Springs and later bequeathed same to the County Court of Boone County to be held in trust as a public place.

"As to that portion of the real estate * * * described as Tract 'B', the Court finds from the evidence presented that Defendants Almond have failed to show record title vested in them. The evidence on this point shows conveyances to one Russell Holloway, singularly, Application for Letters Testamentary, and a quitclaim deed from Geraldine Holloway to these Defendants. The record is silent, however, as to the interest, if any, which Geraldine Holloway had in said real estate.

" * * * as to title by adverse possession * * * it appears that Plaintiff has:

"1. Paid all taxes on the property in question since 1940.

"2. Cut timber on the property from time to time.

"3. That cattle and horses were permitted to graze on the property by Plaintiff.

"It is also noteworthy that Plaintiff's predecessor in title, O. R. Johnson, maintained a successful suit to quiet title to said real estate, and that while Russell Holloway who was at that time the apparent record holder of said real estate was not joined in same, and hence the action was lacking to quiet title against Holloway, certainly same was indicative to all others of Plaintiff's predecessor in title intent to claim against the world this particular tract.

"Accordingly, it is found that Defendants Almond do not have record title and that title by adverse possession is vested in Plaintiff to that portion described as Tract 'B.'

"As to the problem of attempting to give legal effect to Mr. Turner's intention, and whether judicially one can construct a legal description as to this one-half acre with sufficient clarity and understanding that same can readily be ascertained. The Court holds that same can be accomplished and hence orders title quieted to real estate described in Plaintiff's Petition in favor of Plaintiff,

"Except that which is hereinafter reserved to the County of Boone in trust as a public place which is described as follows: Starting at the center of a certain spring known as 'Tumblin Spring' thence North 73.79 feet to the point of beginning, thence East 73.79 feet, thence South 147.58 feet, thence West 147.58 feet [thence North 147.58 feet, thence East 73.79 feet] to the point of beginning, containing in all one-half acre, more or less, together with right of ingress and egress to same from a certain county road located lying South of said spring."

Judgment was entered accordingly:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that the Plaintiff is vested with the fee simple absolute title in and to the following described real estate situated in Boone County, Missouri, to-wit:

"Eighty (80) acres, the East half of the Northwest Quarter of Section 29, Township 47 North, Range 12 West, EXCEPT the following property: Starting at the center of a certain spring known as 'Tumblin Spring', thence North 73.79 feet to the point of beginning, thence East 73.79 feet, thence South 147.58 feet, thence West 147.58 feet, thence North 147.58 feet, thence East 73.79 feet to the point of beginning, containing in all one-half acre, more or less, together with right of ingress and egress to same from

a certain county road located lying south of said spring.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant County Court of Boone County, Missouri, is vested with fee simple title, In Trust, as a public place, to the following portion of the East half of the Northwest Quarter of Section 29, Township 47 North, Range 12 West, Boone County, Missouri, described as follows, to-wit:

"Starting at the center of a certain spring known as 'Tumblin Spring', thence North 73.79 feet to the point of beginning, thence East 73.79 feet, thence South 147.58 feet, thence West 147.58 feet, thence North 147.58 feet, thence East 73.-79 feet to the point of beginning, containing in all one-half acre, more or less, together with right of ingress and egress to same from a certain county road located lying South of said spring.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all other Defendants have no right, title or interest in and to the aforesaid real estate."

Appellant John contends the court erred (I) in quieting title to Tract A in the County Court of Boone County, asserting the evidence established title to said tract in him by adverse possession. He argues that the evidence shows that his possession of Tract A was hostile, actual, open and notorious, exclusive, and continuous for a period of ten years prior to commencement of his action to perfect title. See Section 516.010, RSMo 1969; *Wykle v. Colombo*, 457 S.W.2d 695, 700 (Mo.1970). In anticipation of reliance by the county court on Section 516.-090, RSMo 1969, which provides that "[n]othing contained in any statute of limitation shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to this state," he argues also that the use of land within the provisions of Section 516.090 may be and was abandoned and, in such case, the statute no longer provides protection from adverse possession. See *Anson v. Tietze*, 354 Mo. 552, 190 S.W.2d 193 (1945).

Appellant John contends the court erred (II) with respect to Tract A, asserting that the county court acquired no interest in Tract A under the will of Howard Turner. He argues (A) that Howard Turner had no interest to will to the county court because he deeded the 40 acres which included Tract A to Henry Turner. The attempted exception and reservation was void due to insufficient and uncertain description, and should be construed against the grantor (Howard) and in favor of the grantee. See *State v. Jacob*, 362 Mo. 781, 244 S.W.2d 7, 9[2] (1951); 23 Am.Jur.2d, Deeds § 264; 26 C.J.S. Deeds § 140. He argues (B) that even if Howard Turner owned Tract A at his death, his will was insufficient to devise any interest in Tract A to the county court, again because the description is insufficient to permit a determination of the trust property. See 26 C.J.S. Deeds § 30; *Edgar v. Fitzpatrick*, 377 S.W.2d 314, 317 (Mo. banc 1964). He argues (C) that even if the county court satisfies his arguments (A) and (B), no interest in Tract A was acquired by the county court because there was no acceptance; and acceptance may not be presumed because this gift imposed a burden on the county court. See *Sanders v. Jones*, 347 Mo. 255, 147 S.W.2d 424, 427 (1941).

Appellant John contends the court erred (III) with respect to Tract A, asserting that even if the county court acquired and accepted some interest in Tract A under the will of Howard Turner, any such interest had been abandoned prior to the action. He argues that such abandonment is shown by taxes paid on the entire 80 acres and improvements to the spring area which he made following a visit with the county court to determine its intentions, and thus, that the fact question of abandonment should have been resolved in his favor. See *Anson v. Tietze*, supra; *Gibson v. Sharp*, 277 S.W.2d 672 (Mo.App.1955).

Appellant John contends the court erred (IV) with respect to Tract A asserting that even if the court was correct in finding some interest in Tract A in the county court, the decree to that effect is void because (A) it is so vague and indefinite as to

be impossible of ascertainment and unsupported by evidence; and (B) it goes beyond and is inconsistent with the pleadings and issues. See *Brotherton v. City of Jackson*, 385 S.W.2d 836 (Mo.App.1965).

Finally, appellant John contends the court erred (V) with respect to Tract A because the county court was estopped to claim any ownership in Tract A. He argues this is shown by the county court's inaction while watching and permitting him to expend money and effort to improve the spring area.

■ The difficulty of appellant John under (I) and (II) is that the evidence is insufficient to establish his claimed adverse possession of Tract A. It is thus not necessary to discuss application of Section 516.090.

Hurst John entered possession of the entire 80 acres which encompassed Tract A under the deed of March 11, 1940, from O. R. and Ruth P. Johnson. That deed reserved, as acknowledged by Mr. John, the right of ingress and egress to the spring and the spring tract, all as originally reserved in the deed of February 10, 1893, from Howard and Mary Louise Turner to Henry Turner. The Turner deed, in expressing the original reservation, excepted from the conveyance and reserved one-half acre of ground and the spring within it. Both sides of the Turner conveyance were to maintain one half of the fence around the spring, and Mr. John found remnants of old fencing at the spring. Mr. John recognized Tract A as something apart from the entire 80 acres by references such as a private road from the county road to the spring area, the spring itself, the spring area, the spring property, etc. He acknowledged, as he must, the exceptions and reservations affecting such property in his title, and he further acknowledged the Turner reservation by his attempt to purchase the spring property. He acknowledged the devise of the spring property by Howard Turner to the county in his correspondence with James Turner. He further acknowledged the devise of the spring property to the county court and the court's acceptance of the devise by his visits to that body

seeking permission to erect signs advising of the condition of the county road and seeking information as to the court's intention with respect to its property. Such acknowledgment preceded any improvements that he made, and they were modest and for his enjoyment. The timing of such improvements indicates they were made with permission, actual or tacit, from the court. In at least one instance, a road barricade, he told the court what he was doing "and they had no objections."

■ The foregoing circumstances show that Mr. John recognized Tract A as an identifiable piece of property within his 80 acres; that he recognized his lack of title to it; and that he recognized the county court's title to it by the devise from Howard Turner. There is no evidence to show that the devise placed a burden on the court in rebuttal of presumed acceptance of the gift. *Sanders v. Jones*, supra. Possession of land in recognition of a lack of title is insufficient to ripen into title by adverse possession. *Riebold v. Smith*, 150 S.W.2d 599, 602–603[5] (Mo.App.1941); *Gates v. Roberts*, 350 S.W.2d 729, 732 (Mo.1961). Such circumstances also indicate that Mr. John's possession and use of Tract A were permissive, and permissive possession is inimical to adverse possession. *Walker v. Walker*, 509 S.W.2d 102, 106 (Mo.1974). Hostile possession, *Wykle v. Colombo*, supra, is thus lacking in Mr. John's claim, and when any element of adverse possession is lacking, no title by adverse possession can ripen. *Eaton v. Curtis*, 319 Mo. 660, 4 S.W.2d 819, 822 (1928).

■ The difficulty of appellant John under (III) and (V) is that abandonment and estoppel are questions of fact, and he has failed to meet his burden of proving his assertion that the county court abandoned, or is estopped to claim, the interest it acquired in Tract A under the will of Howard Turner, *Anson v. Tietze*, supra, 190 S.W.2d l. c. 196. His payment of taxes assessed against his interest in the 80 acres is not relevant to the asserted abandonment. Payment of taxes alone is insufficient to raise an estoppel. *Kunkel v. Griffith*, 325

Mo. 392, 29 S.W.2d 64 (1930). He would be liable for his taxes in any event. Neither do his improvements of the spring tract show the asserted abandonment and estoppel. The court did not stand by and let Mr. John improve its property; any improvements were made only after consultation with the court and seemingly with permission of the court. Such circumstances are inconsistent with abandonment and estoppel. The grant itself was in trust, "never to be sold and to be used by the public under the court's supervision." There is no indication of a sale, public use of the tract was shown to be the same before and after the devise, and permitting Mr. John to use the tract implies some supervision. It is true that the court has not commenced development of the area as a "park," as asserted by appellant, but the grant does not require the court to develop a park to avoid an abandonment.

■■■ The difficulty of appellant John under (IV) is that everyone who dealt with Tract A from Howard Turner to the present owner, including Mr. John, is shown to know Mr. Turner's intention and to know and be able to identify the one-half acre north of the county road in the northeast quarter of the northwest quarter of Section 29, Township 47, Range 12, upon which Tumbling Spring is located. It was appropriate to receive testimony to aid resolution of the description of the grant to the county court. *Ashauer v. Peer*, 147 S.W.2d 144 (Mo.App.1941). The intent and purpose of the original reservation in the 1893 deed was to provide a half acre around the spring so that Howard Turner could always get water for stock and for his use. This would require access to a spring outlet which rules out any concern for the "toaster" area or underground waterways; and Mr. John stated that the toaster and the spring were 150 feet apart. He also recognized a "main spring." The court's description uses the spring as a natural monument, and, by metes and bounds, describes a one-half acre square tract to enclose it, with access from the county road to the south. The fence remnants in the area so enclosed also provide some evidence in support of the boundaries chosen by the court; and Mr. John noted existence of a private road from the county road to the spring area. The original exception and reservation included ingress and egress, and the intent of the devise to the county appears to be that of giving the county the trust of all that Howard Turner excepted and reserved with respect to the spring. This comports with rules governing interpretation of legal descriptions, e.g., Treatise on Real Property Law in Missouri, Gill, Vol. II, pp. 714–715:

"The first rule is that if there is enough description to show the intention, the errors, no matter of what nature, will simply be disregarded and the intention given effect.

"The second rule is that if it is not possible to determine the intention from a reading of the description, the court will consider the 'elements' of the description and will give priority to them according to the probability of accuracy in view of the experience of courts in dealing with similar descriptions.

"These elements of a description fall into three classes: 1. Monuments. 2. Distances. 3. Area. In case of a conflict, these elements will govern in the stated order of priority. * * *

"Monuments are either natural or artificial. Natural monuments include rivers, creeks, trees and other natural objects. * * * In case of a conflict, natural monuments will govern over artificial monuments."

■■■ In the last sense, the spring, "Tumblin Spring," a natural monument, governs over the erroneous area designation, "in the Southeast corner thereof," (in the Turner deed of 1893), an artificial monument. For similar applications, see *Riggs v. Myers*, 20 Mo. 239 (1855), which involved land as described in Township 60 "with the privilege of using the water of the 'Big Spring,' having free access to and from it as he may wish." Parol evidence showed that Big Spring was located in Township 59 and that the grantor owned no land in Township 60. The court voided that part of the description naming Township 60 and al-

lowed a location of the land in Township 59 which encompassed Big Spring.

Appellants Almond contend the court erred in quieting title to Tract B in Hurst John, asserting there was no evidence to show that Mr. John had actual possession of Tract B or that his possession was actual and continuous.

The difficulty of appellants Almond is that they showed at most color of title. They failed to show record title in themselves. Their claim arises from a quitclaim deed from Geraldine Shobe Holloway, and there is no evidence that she ever had an interest in the property. Their only witness on their claimed adverse possession, Mr. Brynjulfson, testified only with respect to acts of possession of Tract B by Mr. John. They presented no evidence of acts of possession by themselves or by their predecessor, Mr. Brynjulfson; and Mr. Brynjulfson never claimed any interest in Tract B during his ownership of the Almond farm to the north which he conveyed to them in 1968.

Judgment affirmed.

All concur.