Eugene V. KRELL and Elizabeth T. Krell, his wife, and Helen Tindorf, Plaintiffs-Appellants, Cross-Respondents,

v.

Rodney O. DAVIDSON and Kathleen P. Davidson, his wife, et al., Defendant-Respondent, Cross-Appellant.

Nos. 48217, 48892.

Missouri Court of Appeals, Eastern District, Division Four.

May 28, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 12, 1985.

Application to Transfer Denied Sept. 10, 1985.

Norbert M. Reker, Eugene V. Krell (Senior Counsellor), St. Louis, for plaintiffs-appellants.

Roger M. Hibbits, Florissant, for defendant-respondent.

SNYDER, Judge.

These cross appeals arise from a dispute about the ownership of a three-foot strip of land between the parties' neighboring residential lots in south St. Louis. Eugene V. Krell, Elizabeth T. Krell, his wife, and Helen Tindorf (referred to collectively as "the Krells") claimed ownership of the strip by adverse possession. Rodney O. Davidson and Kathleen A. Davidson contended that their ownership, based on the City of St. Louis records, was paramount. The trial court found that the Krells were entitled to a portion of the disputed three-foot strip by adverse possession and both parties appeal. The judgment is affirmed.

The Krells were the plaintiffs. They brought their original petition in twelve counts. Other real property owners along the block where the Krells and the Davidsons lived were joined because early in the development of the subdivision the boundary lines of lots 2 to 11, inclusive, were thought to be three feet to the south of the lines described in recorded instruments. All of the lots were 35 feet wide by roughly 120 feet deep. Fences were built by nine of the lot owners three feet south of the recorded boundary lines in a mistaken belief that the fence lines were actually the southern boundaries of their lots.

The counts were severed by the trial court. Counts I, II, III, IV and XII were tried by consent to the court without a jury. The other counts relate to various other charges brought by the Krells against the Davidsons and against the City of St. Louis, the gravamen of the actions being negligence and discrimination, in addition to denial of due process by the city.

▮ The separate counts tried related to entirely separate and independent claims, the boundary disputes. All the remaining counts sounded in tort and discrimination. Therefore, the judgment entered was a final judgment for purposes of appeal under Rule 81.06.

Count I sought determination of the title to the disputed three-foot strip between the Davidsons' Lot 3 and the Krells' Lot 4. Count II sought recovery of the premises and damages. Count III prayed for an injunction against the Davidsons to prohibit them from using the three-foot strip. Count IV was another count for recovery of the three-foot strip and for damages. Count XII sought a determination of the title to the three-foot strips between other lots on the block and reformation of the deeds to these lots.

The trial court ruled that the Krells were entitled by adverse possession to that portion of the three-foot strip which was essentially located between the back yards of the parties, and denied the Krells' claim to the front portion of the strip which lay between the residences and extended to the front of the lots at the street.

On Count II the court ruled again that plaintiffs were the rightful owners by adverse possession of the described strip of land and that the Davidsons should remove a chain link fence which they had previously erected at the boundary between the lots on the north side of the three-foot strip. Relief was denied on Count III for injunction because of the adjudication on adverse possession. The Krells' claim for damages on Count IV was also denied.

The trial court held that there was no evidence to support the prayer for relief in Count XII on determination of title and reformation of the deeds to the other lots in the subdivision.

The trial court ordered the parties to attempt to agree on a legal description of the portion of the three-foot strip which had been awarded to the Krells based on their adverse possession. The parties were unable to agree. The court then appointed a master as provided in Rule 68.01. The court in its final judgment accepted the master's report which included the required legal description.

The Krells charged the trial court erred: 1) by failing to find that they owned the entire three-foot strip by adverse possession; 2) by the reference to a master for determination of the legal description of the adversely possessed parcel; 3) in its acceptance of the report of the master and in allowing an inappropriate and unreasonable fee; 4) in refusing to reopen the case for additional evidence.

The points fail to state exactly what ruling of the trial court is alleged to be error and wherein and why the trial court erred as mandated by Rule 84.04(d). They are so unspecific as to make it difficult for this court to rule upon them, but a lengthy discussion is unnecessary.

The standard of review in this court tried case is set forth in Rule 73.01 as interpreted by the supreme court in *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). The judgment of the trial court is to

be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law.

The Krells' points relied on are based on a claim either that the judgment is against the weight of the evidence or that the trial court abused its discretion. This court finds that the judgment finding no adverse possession of the front portion of the strip was supported by substantial evidence and was not against the weight of the evidence. The reference to a master, the acceptance of his report and the award of the master's fee was not an abuse of discretion, nor was the denial of the Krell's motion to reopen the case for additional evidence. An extended treatment of the points would have no precedential value and they are denied in compliance with Rule 84.16(b).

The Davidsons' sole point on appeal, and a truly troublesome one, is that the trial court erred in its finding that the Krells acquired title to the rear strip by adverse possession. After a thorough consideration of the facts and the law, this court denies the point and affirms the adverse possession judgment.

■ The elements necessary to establish a title by adverse possession are possession that is 1) hostile, that is, under a claim of right; 2) actual; 3) open and notorious; 4) exclusive; and 5) continuous for a period of at least ten years. The only element which is in question here is whether or not the possession was hostile.

Elizabeth Krell and her sister Helen Tindorf received a deed to Lot 4 on March 25, 1946. They took the property as joint tenants with the right of survivorship. On August 4, 1965 Elizabeth Krell and Helen Tindorf deeded an interest in Lot 4 to Eugene Krell. Both deeds contained the following description:

Lot number 4 in block No. 1 of SOMERSET PARK and in block No. 6121 of the City of St. Louis, fronting 35 feet on the East line of Watson Road, by a depth Eastwardly of 120 feet to an alley; together with all the improvements thereon, known as and numbered as 3642 Watson Road.

The deed under which the Davidsons took title to Lot 3 on January 23, 1968 also referred only to Lot 3 fronting 35 feet on the east line of Watson Road by a depth eastwardly of 120 feet to an alley.

Neither the parties nor the trial court emphasized the fact that the deeds to the lots in the case under review contain no metes and bounds descriptions showing the location of the property lines, only a recitation that lots 35 feet by 120 feet in block 6121 of the City of St. Louis were being conveyed. The only way in which the lot owners could establish the exact boundaries was by consulting records in the Office of the Recorder of Deeds.

Apparently the parties agreed upon the location of the true recorded boundary line between the lots. At any rate, the court found, based upon a survey which was received in evidence, that the fence between Lots 3 and 4 was originally three feet south of the true boundary. In other words, the parties recognized that a fence, as it existed from before 1946 until 1971 when it was moved by the Davidsons, was not on the property line.

The evidence about the fences is important. From a time prior to 1946 when Elizabeth Krell and Helen Tindorf took title to Lot 4, and until 1971, a fence existed on a line three feet to the south of the recorded boundary line between Lots 3 and 4. The fence extended from the rear of the lots to a point at the rear of the residences of the parties. The Krells erected gates at each end of the fence, one from the fence to their garage in the rear and another from the fence to their house in the front.

In 1971 the Davidsons tore down the fence between the lots and erected a new fence on the recorded property line three feet to the north.

Until the Davidsons moved it in 1971, the fence, which extended from the rear of the lot to the rear of the Davidson and Krell residences, and which was three feet south of the recorded property line, enclosed a

portion of the Krells' rear yard in which their dog at one time ran and which they considered a part of their yard and used continuously until 1971. They planted a peach tree in the disputed area and paved part of it.

■ There was substantial evidence to support the trial court's finding that the Krells had actual and exclusive, open and notorious possession of the three-foot strip for a continuous period from 1946 until 1971 when the fence was moved by the Davidsons. There remains the issue of the hostile possession under claim of right.

■ The Missouri law, and indeed the law in many jurisdictions, which defines hostile possession in adverse possession litigation is not precise. For a scholarly discussion of the question of hostile possession under claim of right see Helmholz, *Adverse Possession and Subjective Intent*, 61 Wash.U.L.Q. 331, (1983).

The facts in *Walker v. Walker*, 509 S.W.2d 102 (Mo.1974) are similar to the facts in the instant case. A three foot strip of land was in dispute. There was also a fence which was moved by defendants to prevent plaintiffs from using a driveway which included the three foot strip. Plaintiffs had used the driveway for 30 years prior to the construction of the fence.

The supreme court held that the plaintiffs were entitled to the land by adverse possession; that their possession was hostile, saying at page 106[2, 3]:

"Hostile possession" means possession opposed and antagonistic to the claims of all others, and imports the occupation of land by the possessor with the intent to possess the land as his own.

Citing *Gates v. Roberts*, 350 S.W.2d 729, 732[2, 3] (Mo.1961). *Walker* also cites *Miller v. Warner*, 433 S.W.2d 259 (Mo.1968) which in turn cites *State v. Shain*, 348 Mo. 119, 152 S.W.2d 174 (1941).

In *State v. Shain* the court said at 152 S.W.2d page 176[4], among other things, that a claim " 'must be a hostile claim, one that is in opposition to, and cannot be reconciled with, the rights of the true owner, whether they be known or unknown. In short, the determining factor is not what the encroaching owner knew about the true boundary line, but what he intended to unequivocally claim was his boundary line,' " quoting *Bell v. Barrett*, 76 S.W.2d 394, 396[2, 3] (Mo.1934).

The court in *Shain* also said on 152 S.W.2d page 177[5–8]:

One may have such an intent in the case of property actually belonging to another, because he intentionally wants to take it away from the owner. But he may also have this intent because he is mistaken as to the facts of legal ownership.

These cases strongly support the trial court's ruling in granting a portion of the three foot strip to the Krells. They possessed the land as their own from 1946 until 1971 when the Davidsons moved the fence. They had possessed it in such fashion and used it as their own for the requisite ten year period, even before the Davidsons bought the lot next door on January 23, 1968. At that time they had possessed the property as their own for some 25 years.

It is true that Mr. Krell made an offer to Mr. Davidson to purchase the three foot strip at some time, the exact date not in the record, after 1968 and before the Davidsons moved the fence in 1971. This offer indicated that the Krells knew there was some dispute about the boundary, and although the trial court did not mention the offer in its opinion, the trial judge could have inferred that it was made in order to settle the dispute which existed between the parties. The Krells were entitled to the rear strip by adverse possession long before the Davidsons purchased the lot.

It is also true that the Krells knew there was a question about the ownership of the three foot strip as far back as 1951 when the owner of Lots 1 and 2 moved a fence on Lot 2 from its position three feet from the property line to a retaining wall on the property line. Nonetheless, the Krells continued to occupy the disputed parcel as

their own after that time, and until the fence was moved by the Davidsons.

Taking into consideration the totality of the circumstances, this court finds that the trial judge, after a trial in which not inconsiderable difficulties arose, reached the only result possible under the equities of the case.

As the Davidsons argue, there is language in some of the cases to the effect that possession when the possessor knows that someone else holds title to the land cannot ripen into title by adverse possession. *John v. Turner*, 542 S.W.2d 293, 300[2–5] (Mo.App.1976). The *John* case, however, did not turn completely on the question of knowledge of lack of title, however, but also upon the fact that the possession and use of the person claiming by adverse possession was permissive.

The western district, without referring to *John v. Turner, supra*, seems to have tempered the language in that case. In *Schaumburg v. Heafey*, 650 S.W.2d 697 (Mo.App.1983) the western district affirmed a case in which the trial court had awarded defendants title to a disputed property by adverse possession. In question were two disputed fenced strips of land. The court cited *State v. Shain, supra*, and said that "Missouri has joined other jurisdictions in tempering the harsher rule by announcing that the exclusive possession and use of land is presumed to be adverse, absent positive proof to the contrary." *Schaumburg* at 699. There was no positive proof contrary to the Krells' adverse possession of the disputed strip.

The Davidsons also cite *Teson v. Vasquez*, 561 S.W.2d 119 (Mo.App.1977) for the proposition that naked possession cannot ripen into adverse possession no matter how long the land is possessed. There was more than naked possession here.

*Teson* also stands for the proposition that each adverse possession case must be decided in light of its own unique circumstances because every source of land is unique. *Teson*, page 125[3]. *Teson* further quotes *Walker v. Walker, supra*, in saying possession to be hostile it must be

opposed and antagonistic to the claims of all others. *Teson* at 127. The Krells possessed their portion of the disputed strip in this fashion for the requisite ten years and more.

The judgment is affirmed.

SMITH, P.J., and SATZ, JJ., concur.