Jimmie M. NORMAN,
Plaintiff–Appellant,

v.

Charles ALLISON and Rebecca Allison,
his wife, Defendants–Respondents.

No. 15793.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 8, 1989.

---

Robert S. Wiley, Crane, for plaintiff-appellant.

Emory Melton, Cassville, for defendants-respondents.

MAUS, Judge.

Plaintiff–Appellant Jimmie M. Norman holds record title to a 240–acre farm that includes the NE¼ NE¼ of Section 27, Township 25, Range 26. The defendants-respondents, Charles Allison and Rebecca Allison, hold record title to a farm of approximately 185 acres that includes the NW¼ NE¼ of that section. The two 40–acre tracts obviously adjoin. By this action appellant sought a declaration that he had acquired title to a triangular tract off the east side of respondents' 40–acre tract by adverse possession. Or, in the alternative, appellant sought a declaration he had by prescription acquired an easement for a road over that triangular tract. The circuit court found appellant did not possess or use the triangular tract under a claim of right and denied the appellant relief. Appellant presents two points.

In view of the issues raised by those points, a brief summary of the facts is sufficient. The Camp Bliss Public Road runs in a northeast-southwest direction through the farms of the appellant and respondents. That road extends diagonally through the SW ¼ SE ¼ of Section 22 (owned by respondents) and the SE ¼ SE ¼ of Section 22 (owned by appellant). Reproduced below is a sketch (not to scale) of the four quarter-quarter sections to show the boundaries and landmarks mentioned in this opinion.

SWSE - Section 22

SE SE - Section 22

Camp Bliss Public Road

Old Mining Road

NW NE - Section 27

NE NE - Sec. 27

New road

228.5'

146'

At the time appellant bought his farm in 1972, an old mining road ran south from the Camp Bliss Public Road in NE ¼ SE ¼. The old mining road ran south approximately two hundred feet from the west line of the NE ¼ and SE ¼ and SE ¼ SE ¼ in Section 22. It entered the NE ¼ NE ¼ in Section 27 (appellant's adjoining 40) approximately 200 feet east of the northwest corner of that forty. It extended south to approximately the middle of that forty where it turned west and entered the NW ¼ NE ¼ in Section 27 (respondents' 40 in question). It then ran in a southwesterly direction and left that 40 approximately 230 feet west of the southeast corner thereof. There it entered the SW ¼ NE ¼ in Section 27 (a part of appellant's farm).

In 1972 the land in question was largely covered with trees and brush. The old mining road was indistinct. There were remnants of a fence in trees along the west side of the old road. In March 1974, appellant decided to build a new road to reach his SW ¼ NE ¼. The Bunselmeyers then owned respondents' farm. Appellant met with the Bunselmeyers on the NW ¼ NE ¼ (then owned by the Bunselmeyers) to show them where the road was to be located. Appellant's testimony included the following:

"A. ... I went and got them in my car and took them out there.

Q. And they consented to the fence being built at that particular point? A.

Yes, and they said they would pay for half of it."

The Bunselmeyers did pay for half of it. The appellant then constructed a new road and fence along the west side of that road. That fence extended from a point nine feet east of the northwest corner of NE ¼ NE ¼ (owned by appellant) through the NW ¼ NE ¼ (owned by respondents) in a southwesterly direction to a point on the south line of the latter 40, one hundred forty six feet west of the southeast corner thereof. The fence enclosed a triangle off the west side of the NW ¼ NE ¼. The fence was completed in June 1974.

The appellant used his farm to run cattle. After constructing the fence, he cleared the area, including the disputed triangle, and sowed it in fescue. Since building the fence, he has continuously used the disputed triangle as part of his farm, until the fence was moved by the respondents in 1984. The use was open and exclusive.

The respondents bought their farm in October 1974. They did not look at the fence in question at the time of their purchase. In 1980, they noticed that the fence was askew. They confirmed their observation by obtaining a photograph of the area from the county ASCS office. Starting late in 1980 or in 1981, they attempted to negotiate with appellant for the relocation of the fence. In 1983 the respondents established the "true line" by a survey. After an earlier attempt to do so, in October 1984 they moved the fence to the true line.

During cross-examination of the appellant, counsel for the respondents inquired concerning the appellant's intention in building the fence. The following is the essence of the appellant's testimony on that subject.

"Q. In the building of that fence, you were not going to try to get or you were not claiming property that you did not have a deed for, were you?

A. I was merely building a fence where—

Q. You were not trying to claim property that you did not have a deed for, were you?

A. I was only—are you saying that I—

Q. I asked you a question.

A. I don't know what you want me to say.

Q. Mr. Norman, I am just asking you a question. You did not intend to claim some property that you did not have a deed for but you were just going to build a fence, is that right?

A. Yes, I guess that would be right."

The circuit court made exceptionally thorough Findings of Fact and Conclusions of Law. In doing so, it acknowledged the excellence of counsels' representation of their respective clients. This court has been aided by the outstanding briefs filed by the parties. The circuit court's Memorandum Opinion included the following Conclusions of Law:

"A. That plaintiff['s] claim to the disputed tract and roadway is based upon adverse possession. To acquire title to real estate by adverse possession, and to acquire a right of way by prescription, the claimant must show possession (or use, in case of the right of way) by the claimant and his predecessors in title which is (1) hostile, *that is under a claim of right;* (Emphasis Ours) (2) actual, (3) Open and notorious; (4) exclusive; and (5) continuous for the necessary period of time prior to the commencement of the action." (Emphasis in original.)

The circuit court cited and relied upon *Walker v. Walker,* 509 S.W.2d 102 (Mo. 1974) and *Maupin v. Bearden,* 643 S.W.2d 860 (Mo.App.1982). It concluded that because appellant "by his own admission made no claim of right to the disputed tract or roadway his request for injunctive relief, declaratory judgment vesting title in him and for damages must be denied."

The appellant's first point is that the circuit court erred because "his admission that at the time of the construction of the fence in question the plaintiff did not intend to claim property for which he had no deed ... does not negate plaintiff's claim of right to the property in question...." He argues "it is not necessary for the plaintiff to prove that he had an intention

to claim property which was not covered by his deed in order to prevail in his claim of adverse possession." He relies upon the following statement.

"Although the extent of their possession and claim, as indicated by the fence and hedge, originated in mistake as to the location of the true boundary line between 446 and 450 Oak, there was no evidence tending to show or to justify the finding that defendants or their predecessors claimed only to the true line irrespective of the fence and hedge." Citing *Walters v. Tucker*, 308 S.W.2d 673, 680 (Mo.1957).

The respondents argue that the appellant's admission defeats his claim of adverse possession. They rely upon the following statement.

" 'With respect to a claim of title by adverse possession—although a claimant, *upon occupancy under a mistake as to the true boundary,* did not intend to take land from the true owner and did not intend to occupy and possess land to which he had no record title, *his possession may be hostile and adverse if he intended to occupy and did occupy as the owner.* * * *' (Emphasis ours)." *Walters v. Tucker*, supra, at 676.

They also cite *Walker v. Walker*, 509 S.W.2d 102 (Mo.1974), *Courtner v. Putnam*, 325 Mo. 924, 30 S.W.2d 126 (1930), and *Rector v. Mo. Dept. of Natural Resources*, 685 S.W.2d 225 (Mo.App.1984).

The intent with which a claimant must possess real property to establish title by adverse possession is an elusive, somewhat ethereal, element. The requirement varies between the states. Annot., Adverse Possession—Boundary—Mistake, 80 A.L.R.2d 1174 (1961). It has been the subject of numerous texts and articles. 5 G. Thompson, The Modern Law of Real Property § 2549 (1979 Repl.); 7 R. Powell, The Law of Real Property, Paras. 1012 & 1013 (1989); J. Hand & J. Smith, Neighboring Property Owners § 6.05 (1988); J. Bruce & J. Ely, The Law of Easements and Licenses in Land, Paras. 5.02 & 5.03 (1988 & Supp. 1988). Statements concerning the required intent are contained in appellate decisions

in this state from its early history to date. Such statements are often dictum. Frequently they are recitations from a prior decision. They vary in their thrust and often are cursorily inconsistent. The cases do contain statements indicating the nature of the claim under which one possesses land is of little consequence. The following is an example. " ' "... It is the intent to possess, and not the intent to take irrespective of his right, which governs...." ' " *Walters v. Tucker*, supra, at 676. Also see *A. Charles Bussen Trust v. Kertz*, 723 S.W.2d 922, 929 (Mo.App.1987) wherein it states "[t]he hostile element is satisfied where the party occupies the land in question intending to occupy it as his own.... Ignorance of the boundary line is irrelevant as an intent to take away from the true owner is not necessary."

Nevertheless, the controlling decisions establish "that five elements are essential to acquisition of title by adverse possession under Section 516.010, V.A.M.S. The possession must be (1) hostile, *that is, under a claim of right*, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous, for ten years prior to commencement of the action to perfect title by adverse possession." (emphasis added). *Walker v. Walker*, supra, at 106. The requirement that such possession must be *hostile*, under a claim of right, is established by a host of cases. See *Wilton Boat Club v. Hazell*, 502 S.W.2d 273 (Mo.1973); *Moran v. Roaring River Dev. Co.*, 461 S.W.2d 822 (Mo. 1970); *A. Charles Bussen Trust*, supra; *Vecchiotti v. Tegethoff*, 745 S.W.2d 741 (Mo.App.1987); *Krell v. Davidson*, 694 S.W.2d 774 (Mo.App.1985); *Heide v. Sheeks*, 682 S.W.2d 877 (Mo.App.1984). The sufficiency of the claim by one in possession is not to be measured by the morality of that claim or the legal efficacy of an instrument under which the claim is made. Nonetheless, it must be an intent to claim to possess the land as the owner. It is not necessary for the disposition of this case to reconcile the cases that deny title to a squatter (see, *Moran v. Roaring River Dev. Co.*, supra) and the cases that hold a trespasser with no pretext of title may possess the requisite intent [see, *Tillman*

v. Hutcherson, 348 Mo. 473, 154 S.W.2d 104 (1941); Charlton v. Crocker, 665 S.W.2d 56 (Mo.App.1984) ].

The required intent is embodied in an often repeated maxim concerning a claim of adverse possession arising from a mistake (or absence of knowledge) concerning the "true" location of a boundary line.

" 'The rule is that while one's occupancy of an adjoining proprietor's land under a mistake as to the boundary line, and without any intention of claiming beyond the true boundary line, when ascertained, is not adverse possession, yet if he takes and holds possession up to a given point, and *claims to be the owner* to such point, his possession is adverse, notwithstanding his belief that such point is the true boundary line, when in fact it is not.' Brown v. Wilson (Banc), 348 Mo. 658, 666[8], 155 S.W.2d 176, 180[10, 11] [1941]." (Emphasis added.)

Anson v. Tietze, 354 Mo. 552, 190 S.W.2d 193, 196 (1945). Also see State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174 (1941).

At an early date it was required that one claiming by adverse possession had to establish the "hostile or claim of right" element by affirmative evidence of the requisite intent. Ware v. Cheek, 201 S.W. 847, 849 (Mo.1918). That requirement has been relaxed.

"The fact that one encroaches on his neighbor's property by building a fence, or making improvements thereon, thinking the property is his, and that he had no intention of claiming any of his neighbor's property, is not controlling on the question as to whether the possession is adverse. If it were, the protection of the statute would be limited to those who deliberately set out to steal their neighbor's property and to cases where there has been an actual dispute as to the location of the boundary line. In no other case does the occupant intend to claim the land adversely, regardless of legal title. If such were the law, then the man who innocently and inadvertently occupies and improves land beyond his true boundary line or, in other words,

one who most needs and deserves the protection of the statute, would be left without protection. (Citations omitted.)

'The better rule on the subject, is embodied in the doctrine that, in the absence of positive proof or unambiguous circumstances showing that a possession is or is not adverse, the exclusive possession and use of land are presumed to be adverse, it is not necessary to show an intention to hold and claim the property in spite of the fact that legal title may be in another....' "

Edie v. Coleman, 235 Mo.App. 1289, 141 S.W.2d 238, 243 (1940), aff'd, State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174 (1941). "Thus, Missouri has joined other jurisdictions in tempering the harsher rule by announcing that the exclusive possession and use of land is presumed to be adverse, absent positive proof to the contrary." Schaumburg v. Heafey, 650 S.W.2d 697, 699 (Mo.App.1983). Also see Krell v. Davidson, supra.

In this case the circuit court found there was *positive proof* that the appellant's possession was not hostile, under a claim of right. The appellant's admission, standing alone, is substantial evidence to support the finding of the circuit court within the doctrine of Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Moreover, each claim of adverse possession must be decided upon the basis of its own unique circumstances. Krell v. Davidson, supra. The appellant could not have based his claim to the disputed triangle or the right to build the road upon the old mining road. He acknowledged that the old mining road entered the respondents' 40 only at the midpoint of the east line of that quarter-quarter section. The boundary of the disputed triangle is far from coinciding with the boundaries of the old road. Further, the appellant acknowledged that he had asked permission to build the road. In light of these circumstances, the appellant's admission he was "merely building a fence" has greater significance. It is "positive proof" to support the judgment of the circuit court. Appellant's first point has no merit.

■ The appellant's second point is that the circuit court erred in not granting his alternative prayer to declare he had acquired an easement for the road by prescription. The applicable Missouri cases were thoroughly reviewed and the required elements to establish an easement by prescription were succinctly stated by this court in an opinion by a distinguished judge and scholar, the late Judge A.P. Stone:

> "... long-continued use alone will not create a prescriptive right.... For, the use which will create an easement by prescription is substantially the same in quality and characteristics as the adverse possession which will give title to real estate ..., and thus must be not only open, visible, continuous and uninterrupted for the required period but also adverse and under claim of right...." (citations omitted). *Miller v. Berry,* 270 S.W.2d 666, 668 (Mo.App.1954).

Also see *Fenster v. Hyken,* 759 S.W.2d 869 (Mo.App.1988); *Eakins v. Sadler,* 683 S.W.2d 303 (Mo.App.1984); *Burgess v. Sweet,* 662 S.W.2d 916 (Mo.App.1983). For the reasons stated the circuit court did not err in denying appellant's alternative prayer. The judgment is affirmed.

PREWITT, P.J., and HOGAN, J., concur.