Terrance LEE, et al.,
Plaintiffs-Appellants,

v.

OSAGE RIDGE WINERY, et al.,
Defendants-Respondents.

No. 51759.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 31, 1987.

Rollings, Gerhardt & Borchers by James A. Borchers, St. Charles, for plaintiffs-appellants.

Terry A. Gould, Richard A. Stockenberg, Clayton, for defendants-respondents.

SIMON, Judge.

Plaintiffs, Terrance Lee, James M. Schnur and Mary Ann Schnur, husband and wife, Lucian W. Dressel and Eva B. Dressel, husband and wife, appeal an order of the Circuit Court of St. Charles County dismissing their petition for failure to state a claim upon which relief can be granted. On appeal, plaintiffs assert that the trial court erred in dismissing their petition because: (1) they have adequately pleaded their cause; (2) they need not exhaust administrative remedies before seeking injunctive relief; and (3) an equitable suit is the proper method to challenge a violation of zoning ordinances. We reverse and remand.

On August 31, 1984, the St. Charles County Zoning Commissioner, James B. Evans, investigated a possible zoning violation by the Osage Ridge Winery (Osage), located east of Augusta, Missouri in unincorporated St. Charles County. Osage is a limited partnership. Horace Peek and Robert Levine are the general partners. The investigation was conducted pursuant to a request by plaintiffs. Following the investigation, Mr. Joe Nichols, the St. Charles County Planning Director, notified Osage that it was operating in violation of the St. Charles County Zoning Ordinances. Osage's property is located in an A–2 agricultural district, and the applicable ordinance provides that there shall be "no restrictions to the sale or marketing of products raised on the premises." The investigation revealed that none of the wines for sale at Osage were the product of grapes grown on the premises.

In a letter dated September 10, 1984, Osage expressed that it envisioned that its winery would grow and it would harvest grapes on its property and use those grapes to produce wine to sell on the premises. Mr. Nichols was of the opinion that "[u]nder such an arrangement, additional grapes grown elsewhere could be brought in to supplement the native grapes in the wine-making process. Likewise, wines made elsewhere could be sold as a supplement to the wines made there. But the key factors that must be present are that grapes must be grown on the winery grounds and they must be used in the production of wine at the winery."

Osage ceased sales and marketing operations for approximately ten and one-half months. During that time, Osage harvested, crushed, and incorporated grapes grown at the winery into wine made on the premises. Apparently, during that time Osage sought another review by the Zoning Commissioner. Osage sought and received an opinion from the St. Charles County Counselor concerning Osage's compliance with the zoning ordinance. On July 23, 1985 the County Counselor's Office issued an opinion stating that "it is permissible for a winery to produce and sell on the premises wine made from a very small percentage of grapes grown within the A–2 agricultural district." Based on the County Counselor's opinion and another inspection conducted on August 28, 1985, Mr. Nichols concluded that Osage had brought itself within compliance. No written notice was given to plaintiffs. By letter dated August 29, 1985, Mr. Nichols advised the St. Charles County Clerk that Osage would be requesting a county liquor license and since Osage complied with the zoning ordinance, the Commission would not object to the issuance of the license.

On November 25, 1985, plaintiffs filed suit against Osage, seeking to enjoin its operation as a commercial winery in violation of the zoning ordinances applicable to the A–2 agricultural district. Plaintiffs also sought a declaratory judgment to the effect that Osage maintain, use, and occupy its property in conformance with the A–2 zoning ordinance and that such ordinance permitted only the sale or marketing of products raised exclusively on the premises owned by Osage.

On March 24, 1986, Osage filed a motion to dismiss for failure to state a claim upon

which relief can be granted. The motion was based on the following grounds: (a) plaintiffs failed to exhaust their administrative remedies; (b) plaintiffs had an adequate remedy at law; (c) plaintiffs had not alleged that they had been damaged; (d) plaintiffs had not alleged that they had suffered any special damages; and (e) the trial court lacked jurisdiction over the subject matter. On June 9, 1986, the trial court dismissed plaintiffs' petition "for failure to state a cause of action and for failure to recite facts which would entitle plaintiffs to relief." The dismissal was predicated on all of the grounds set forth in Osage's motion.

It is well established that in reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, we accept as true all well pleaded facts, giving the averments a liberal construction, and making reasonable inferences fairly deductible from the facts stated. *Schweig v. City of St. Louis*, 569 S.W.2d 215, 218 (Mo.App.1978) (citing *Concerned Parents v. Caruthersville School District 18*, 548 S.W.2d 554, 558 (Mo. banc 1977)). If the facts pleaded and reasonable inferences drawn therefrom, viewed in a light most favorable to the plaintiff, show any ground upon which relief can be granted, then the plaintiff has a right to proceed. *Id.* (citing *Euge v. Golden*, 551 S.W.2d 928, 931 (Mo. App.1977)). In accordance with these principles, we consider whether plaintiffs' petition states a claim for relief.

Plaintiffs' petition contained two counts. In Count I, plaintiffs, Terrance Lee and James and Maryann Schnur, alleged that they own property that is directly adjacent to Osage's land, and that because their property is "in such close proximity" to Osage's land, they are "immediately and adversely affected by [Osage's] current use of the property." They allege further that all properties (plaintiffs Lee and Schnur and Osage) involved in Count I are located in an A–2 zoning district as defined in the St. Charles zoning ordinances and that Osage is operating a commercial winery in a manner prohibited by the ordinance, in that Osage is selling and marketing products not raised on the premises. Plaintiffs Lee

and Schnur alleged that an actual controversy has arisen and now exists between the parties concerning their respective rights and duties under the zoning ordinances, in that Osage contends that it can produce and sell wines on its property from grapes not raised on the property. Plaintiffs allege that only grapes raised on the property can be sold on the premises under the ordinance, absent a variance granted by the St. Charles County Board of Adjustment. Plaintiffs aver that a judicial declaration is necessary in order that the parties may ascertain their rights with respect to their property. Plaintiffs alleged that Osage's prohibited use of its property has and will continue to cause excessive traffic, congestion, and will create substantial safety hazards and annoyances to plaintiffs, their families and properties. Plaintiffs alleged further that Osage's prohibited use of its property will irreparably injure the value of their property and that they have no adequate remedy at law. For Count I plaintiffs prayed that Osage be enjoined from using its land as a commercial winery in violation of the zoning ordinances and that a declaratory judgment be entered determining that under the zoning ordinance the permissive uses in an A–2 district include the sale or marketing of only those products raised on the premises.

In Count II, plaintiffs, Lucian and Eva Dressel, alleged that they operate a commercial winery located in St. Charles County. They allege that their business and property "are in close proximity to [Osage's] land and are immediately and adversely effected by [Osage's] current use of [its] property for commercial purposes." Plaintiffs Dressel then alleged the same violation of the zoning ordinance as contained in Count I and the same need for a declaratory judgment. They allege that Osage's illegal use of its land "has diminished the salability and rentability of plaintiffs Dressels' property, and changed the character of plaintiffs' property and the immediate neighborhood such that its value as lawfully zoned is being irreparably injured, and is being greatly devaluated constituting an illegal infringement on plain-

tiffs' property rights." Plaintiffs Dressel seek the same relief as prayed for in Count I.

The trial court's order dismissing plaintiffs' petition for failure to state a claim, rests on the grounds alleged in Osage's motion. Essentially, the grounds present two bases for the trial court's action. The first is that plaintiffs failed to allege special and peculiar damage so as to be entitled to equitable relief. The second is that plaintiffs failed to exhaust administrative remedies, thereby depriving the trial court of jurisdiction. We find no merit in either basis.

■ Osage argues, and plaintiffs concede, that a private citizen's action to enjoin a zoning violation must be founded on a special damage which is unique to the plaintiffs and different from that suffered by the public at large. We agree. Equity will not interfere to restrain the violation of a zoning ordinance at the insistence of a citizen who suffers no special or peculiar injury (from the act sought to be restrained) different from that suffered by any other citizen. *Shelton v. Lentz*, 191 Mo.App. 699, 178 S.W. 243, 244–45 (1915). Osage argues that the only type of damage set forth in plaintiffs' petition is excessive traffic, congestion, and noise creating substantial safety hazards and annoyances. Osage maintains per *Grommet v. St. Louis County*, 680 S.W.2d 246 (Mo.App.1984), that this type of damage is "no different in kind from that suffered by other members of the public." *Id.* at 251–52. Thus, Osage concludes that plaintiffs have not stated a claim and are not entitled to maintain this action. Osage's reliance is misplaced. *Grommet* only involved a request for an injunction to abate a nuisance. No violation of the zoning ordinance was alleged.

■ Plaintiffs, in both Counts I and II, have alleged that their property is "in such close proximity" to Osage's land that it is "immediately and adversely affected" by Osage's use of its property in violation of the zoning ordinance. Plaintiffs Lee and Schnurs have alleged that their property is "adjacent" to Osage's winery. Plaintiffs, in both Counts, have alleged that Osage's use of its property in violation of the zoning ordinance "will irreparably injure the value of [p]laintiffs' property for which [p]laintiffs have no adequate remedy at law." As a matter of pleading, this was sufficient to state a claim for relief as to special damages. The question of proof is for trial and cannot be addressed at the pleading stage. *See Palmer v. St. Louis City*, 591 S.W.2d 39, 42 (Mo.App.1979).

In *Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n.*, 265 S.W.2d 374 (Mo.1954), our Supreme Court held that the plaintiffs therein who owned properties "in the same block contiguous to, or on the same side of or across the street from the property of the defendant, or in the adjoining block to the westward," could maintain an action to enjoin the violation of a zoning ordinance. Plaintiffs, in *Kellog*, filed suit in the Circuit Court of the City of St. Louis seeking to enjoin the defendant's use of its property as a convalescent home for aged women, in violation of the St. Louis zoning ordinances. Defendant's property was located within the boundaries of a single family dwelling zoning district. Under the ordinance, a building within such district could only be occupied by a "group of persons immediately related by blood, marriage, or adoption living together as a single housekeeping unit; [or] a group of not more than five (5) persons not necessarily related by blood or marriage living together as a single housekeeping unit." The defendant was admittedly using his property as a home for twenty-one persons not related by blood or marriage. The trial court granted the injunctive relief sought by plaintiffs and the defendant appealed.

On appeal the defendant contended that there was no evidence actually introduced tending to show special injury because of the violation of the ordinance and the court responded:

In our case, plaintiffs did not actually introduce evidence tending to show their properties are or will be rendered less desirable for residential use or are or will be depreciated in value because of defendant's use ... *Depreciation of value peculiarly effected to a plaintiff's prop-*

*erty, of course, is considered as a special damage different to that of the general public.* But we think it should not be held that a showing of depreciation of value or of any special pecuniary damage is essential to the maintenance of this action by plaintiffs or that depreciation of value of their property is the only special damage which the plaintiffs herein may suffer. It was shown in evidence that plaintiffs are owners and residents of property in a district zoned for use as "single-family" dwellings. Plaintiffs have an interest in the continuation and observance of the single-family dwelling classification of the zoned district in which they reside and own property, and it would seem they should be entitled to resort to this equitable remedy to enjoin the violation of the zoning legislation and the regulations enacted and promulgated by the zoning authority in invoking the police power with whatever resultant benefit to them or to their properties. In our opinion, they are proper party-plaintiffs and may maintain this action to prevent by injunction the violation of the zoning ordinance, by which violations their interest and benefit in some measure may be destroyed.

*Id.* at 376–77 (citations omitted) (emphasis added). The cases subsequent to *Kellog* have well established that an adjoining, confronting, or nearby property owner is entitled to assert, without further proof of special damages, the violation of a zoning ordinance. This is because the proximity of the plaintiff's property, with that of the defendant, causes damage different in kind from that suffered by the general public. The damage might well be called special, even though material financial loss may not be involved. *See State ex rel. Housing Authority of St. Louis County v. Wind,* 337 S.W.2d 554, 558 (Mo.App.1960); *Allen v. Coffel,* 488 S.W.2d 671, 675 (Mo.App. 1972); *Schweig v. City of St. Louis,* 569 S.W.2d 215, 221 (Mo.App.1978). *Palmer,* 591 S.W.2d at 42. Based on the foregoing, we conclude that plaintiffs may maintain their action for injunctive relief.

The trial court also dismissed plaintiffs' action based on Osage's claim that plaintiffs failed to exhaust their administrative remedies. Osage argues that plaintiffs were required, under § 64.120, RSMo (1978), to appeal their dissatisfaction with defendant's alleged illegal use of its property to the St. Charles County Board of Zoning Adjustment.

Section 64.120 provides in pertinent part:

Appeals to the board of zoning adjustment may be taken by any person aggrieved or by a public officer, department, board or bureau affected by any decision of the administrative officer in administering a county zoning ordinance. Such appeals shall be taken within a period of not more than three months and in....

Osage contends that the August 28, 1985 reinspection of its premises by the St. Charles County Zoning Commissioner, together with the letter written by Joe Nichols, the planning and zoning director, advising the St. Charles County Clerk that Osage was in compliance with the zoning ordinance, constitutes a "decision of the administrative officer in administering the county zoning ordinance." As such, Osage maintains that plaintiffs had to first appeal to the board of zoning adjustment before seeking equitable relief in circuit court.

In *Evans v. Roth,* 356 Mo. 237, 201 S.W.2d 357 (1947), our Supreme Court recognized that "[a] private individual has the right to maintain an action to compel the owner of a building to make it conform to the zoning regulations of the municipality, and to restrain the owner from using it for nonconforming purposes when the nonconforming use will result in special damage to the plaintiff. Under such circumstances, the plaintiff's right to relief is not dependent upon his having requested the public authorities in charge to enforce the ordinance and prevent its violation." *Id.* 201 S.W.2d at 361 (quoting Thompson on Real Property (Per.Ed.), Vol. 10, p. 727, § 5632).

In *Evans,* after unsuccessful attempts to have a building in a district zoned for "dwellings" (i.e. houses occupied by not more than two families), rezoned as an apartment house, the owner permitted it to

be occupied as four units for dwelling purposes. Interested parties instituted an action to enjoin the owner from using the building as an apartment in violation of the zoning ordinance. The plaintiffs alleged, and the proof sustained, that the operation of the structure as an apartment house would make their properties less desirable as residential property and would greatly depreciate its value and usefulness. On appeal, the defendant took the position that the plaintiffs had failed to exhaust administrative remedies available to them and having failed to seek such review, were precluded from the maintenance of their action to enjoin the alleged zoning violation. Specifically, the defendant argued that the plaintiffs were required to apply for abatement of the alleged improper use of the property, and to appeal from an adverse decision, if any, to the Board of Adjustment. This, admittedly, the plaintiffs did not do. The court held that the plaintiffs were entitled to maintain their equitable action despite the defendant's argument.

The *Evans* case holds that a property owner, upon a showing that special damage has been or will be suffered by him as a result of a violation of a particular zoning ordinance by *another adjacent or nearby property owner*, may pursue the remedy of enjoining such violation. The property owner is entitled to pursue this remedy without first petitioning the public authorities responsible for administering the ordinance for abatement of the violation and then appealing from their decision, if adverse, to the Board of Adjustment. *Id.* at 362. *See* Annot. 54 A.L.R. 366 (1928). *See also County of Platte v. Chipman*, 512 S.W.2d 199, 206 (Mo.App.1974).

We are mindful that if an adequate statutory remedy exists, the procedure prescribed therefor is exclusive and must be exhausted before a court may give injunctive or declaratory relief from the provision of a zoning ordinance. *Westside Enterprises, Inc. v. City of Dexter*, 559 S.W.2d 638, 640 (Mo.App.1977). Such a remedy is exclusive and failure to exhaust it deprives a court of jurisdiction to give equitable or declaratory relief. *Id.* In *Westside*, the court concluded that exhaustion of ade-

quate administrative remedies "include[s] application for such remedy as well as appeal of an unsatisfactory decision to an administrative body." *Id.* The plaintiff in *Westside* petitioned for a declaration as to the permissible uses of *its* property under the zoning ordinance after the zoning commission refused to recommend, and the Board of Aldermen to approve, a zoning change. The trial court dismissed the petition. The applicable ordinance (§ 89.100, RSMo) empowered the Board of Zoning Adjustment "[t]o hear and decide appeals where it is alleged there is an error in any order, requirement, decision or determination made by the Zoning Inspector in the enforcement of [the] Ordinance." The court reasoned that because the plaintiff neither applied to the Zoning Inspector for a decision as to the permissible uses of its property, nor appealed an unsatisfactory decision to the Board of Adjustment, the plaintiff failed to exhaust adequate procedures.

■ We conclude that *Evans* controls the instant case. This case involves an attempt by property owners to enjoin another adjacent or nearby property owner from using his property in violation of the zoning ordinance. The action was brought directly against the allegedly offending landowner. Unlike *Westside*, this case does not involve an attempt to change zoning. Moreover, the plaintiffs have not challenged the validity or application of the ordinance *to their property*. Although plaintiffs initiated the August 31, 1984 investigation of Osage, they were not required to do so. As noted, plaintiffs have adequately pleaded special injury, based on proximity, resulting from the alleged violation. Under *Evans*, they were entitled to sue directly for injunctive and declaratory relief, without first applying for abatement and appealing an adverse decision.

By their petition, plaintiffs also sought declaratory relief. In upholding Osage's motion to dismiss, the trial court found that plaintiffs failed to recite facts that would entitle them to such relief. The plaintiffs' petition calls for a construction of permissible uses in an A–2 district under the zoning

**224**

ordinance. Indeed, the entire controversy turns on whether the permissive use of "the sale or marketing of products raised on the premises" allows the sale or marketing of wine derived from a small portion of grapes raised on the premises and a large amount of grapes raised elsewhere.

In an action seeking a declaration of the interpretation of an ordinance, "it is not the function of the trial court on a motion to dismiss or of this court on appeal from a judgment of dismissal to make an analysis of the law under which the rights are claimed or to construe the [ordinance] in question or to determine on the merits whether plaintiff is entitled to the declaratory relief he seeks in accordance with the theory he states." *Crain v. Missouri State Employees' Retirement System*, 613 S.W.2d 912, 915 (Mo.App.1981) (quoting *City of Creve Coeur v. Creve Coeur Fire Protection District*, 355 S.W.2d 857, 859–60 (Mo.1952)). "Only if from the face of the petition, it can be declared 'beyond peradventure of doubt' that a claim of right, under any construction of the [ordinance], is wholly without substance may the petition be dismissed for failure to state a cause of action in declaratory relief." *Id.*

■ Here, plaintiffs' claim of right depends entirely upon the construction of the zoning ordinance. If the ordinance is construed to mean that the wine sold at Osage must be comprised entirely of grapes grown there, then plaintiffs would be entitled to the injunction which they seek. Hence, it cannot be said "beyond peradventure of doubt" that plaintiffs' claim, under any construction of the ordinance, is wholly without substance.

Nevertheless, Osage claims that we should treat the trial court's order dismissing plaintiffs' petition as a summary judgment and affirm on that basis. Under Rule 55.27(b), "[i]f on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 74.04." In the present case, Osage filed with its motion to dismiss, an affidavit of Horace Peek, a general partner of Osage, incorporating six exhibits therewith. The trial court sustained Osage's motion "on the grounds set out therein and and [sic] in affidavits filed."

■ Before a trial court may treat a motion to dismiss on the pleadings as one for summary judgment, when matters outside the pleadings are presented and not excluded, it must first notify both parties that it is treating the motion as one for summary judgment and give the parties opportunity to present all material pertinent to a motion for summary judgment. *Counts v. Morrison-Knudsen, Inc.*, 663 S.W.2d 357, 363 (Mo.App.1983). The record fails to disclose that the trial court complied with the foregoing procedure. Plaintiffs filed no counter affidavits or presented exhibits on the motion. Since the record fails to disclose that the trial court treated the motion as one of summary judgment, we shall not do so. *Id.* at 363.

For the foregoing reason we reverse the order of the trial court dismissing plaintiffs' action and remand for further proceedings consistent with this opinion.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.