**PINEWOODS ASSOCIATES,**
**Respondent–Appellant,**

v.

**W.R. GIBSON DEVELOPMENT**
**CO., Appellant–Respondent.**

**No. WD 44858.**

Missouri Court of Appeals,
Western District.

June 23, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 28, 1992.

Application to Transfer Denied
Sept. 22, 1992.

Joe F. Willerth, Independence, for appellant.

Michael C. McCormick, Lee's Summit, for respondent.

Before BRECKENRIDGE, P.J., LOWENSTEIN, C.J., and HANNA, J.

BRECKENRIDGE, Presiding Judge.

Pinewoods Associates filed an action against W.R. Gibson Development Company on June 12, 1986, claiming that W.R. Gibson's building encroached upon Pinewoods' land and that W.R. Gibson had violated a zoning variance granted to it by the City of Lee's Summit, Missouri. The matter went to trial and was ultimately appealed to this court in *Pinewoods Assoc. v. W.R. Gibson Dev. Co.*, 783 S.W.2d 478 (Mo. App.1990). This court dismissed that ap-

peal because judgment was not final. The present appeal is from the actions taken by the trial court after remand. Both parties appeal the order of the court below. W.R. Gibson contends that the trial court erred in finding that the zoning variance granted to it was of temporary duration and that it had expired. Pinewoods claims error in the trial court's determination that W.R. Gibson had met its burden of proof as to the elements of adverse possession so as to establish title to a 2 × 12 foot strip of land. The judgment of the trial court is affirmed in all respects.

Pinewoods and W.R. Gibson own adjoining tracts of property in Lee's Summit, Missouri. That portion of W.R. Gibson's property zoned for business was a lot which, because of its irregularly-shaped configuration, would not allow for the placement of a business building in conformity with Lee's Summit zoning requirements. In 1974, W.R. Gibson sought a variance from the Lee's Summit Board of Zoning Adjustment. The variance was granted, allowing for the location of a temporary, movable structure outside of the normal setback lines. The variance was to expire when the property was no longer in use by Rockhill Savings & Loan, W.R. Gibson's tenant.

W.R. Gibson entered into a lease with Rockhill Savings & Loan requiring that the tenant construct a movable building on the land. The building constructed, however, was a permanent structure, the plans for which were approved by an employee of W.R. Gibson. The building was located so that it was positioned two feet over the property line of the land now owned by Pinewoods. Rockhill Savings & Loan moved out of the building in 1977 and sold it to W.R. Gibson. Having been advised that the zoning variance had expired, W.R. Gibson applied for a three-year extension of the variance. The zoning board granted W.R. Gibson's application but did not state a time limitation in its written Findings of Fact. The building was leased to various other tenants but stood vacant at the time of the trial.

In 1986, Pinewoods bought the land adjoining the W.R. Gibson property from its then owner, Mr. Ernest Kempf. Pinewoods filed suit against W.R. Gibson seeking removal of the building because of its encroachment onto Pinewoods' land and because the permanent structure violated the Lee's Summit zoning law and W.R. Gibson's variance had expired. W.R. Gibson counterclaimed, asking the court to declare that it had acquired the two-foot strip of property by adverse possession. The trial court's order was silent on the zoning issue and did not identify the boundaries of the land awarded W.R. Gibson on its adverse possession claim. This court remanded the cause and the trial court entered its order finding:

Defendant has satisfied all the elements of adverse possession with regard to the two foot building encroachment and is therefore awarded title to the following tract of land:

**DESCRIPTION:** A tract of land located in the E½ of the NE¼ of Section 5, Twp. 47, Rng. 31, Lee's Summit, Jackson County, Missouri, described as follows: Commencing at the NW corner of said E½; thence S-2 33′ 49″-W along the west line of said E ½ 990 feet, to a point on the South line of lot 66, VALLE VISTA RESURVEY, a subdivision in Lee's Summit, Jackson County, Missouri; thence S-88 –27′-48″-E along the south line of said lot 66, 56.0 feet for a true point of beginning; thence continuing S-88 –27′48″-E 12.65 feet; thence S-2 –33′-49″W 1.77 feet; thence N-87 –55′11″-W 12.65 feet; thence N-2 –33′-49″-E 1.65 feet to the true point of beginning.

\*　　\*　　\*　　\*　　\*　　\*

On September 21, 1978 defendant was granted a variance that expired on October 1, 1982. That temporary variance has expired.

The failure to extend it is attributable to the city, however, and defendant will be granted 180 days from the date of this order to obtain the appropriate variance and provide a copy to this court and plaintiff. If an appropriate variance is

not obtained within 180 days, defendant shall remove any portions of its building which do not conform to zoning requirements regarding distance from lot lines for structures.

## ADVERSE POSSESSION

■ Pinewoods contends that the trial court erred by finding that W.R. Gibson acquired the 2 × 12 foot strip of land by adverse possession. The trial court's decision will be upheld unless the judgment is not supported by substantial evidence, is against the weight of the evidence or if it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). To establish title by adverse possession, a claimant has the burden of proving, by a preponderance of the evidence, every element of adverse possession. *Green v. Lange*, 797 S.W.2d 765, 767 (Mo.App.1990). W.R. Gibson must prove that its possession was (1) actual; (2) hostile, under a claim of right; (3) open and notorious; (4) exclusive; and (5) continuous for the period prescribed by statute. *Gurwit v. Kannatzer*, 788 S.W.2d 293, 295 (Mo.App.1990). Missouri's period of prescription is ten years. Section 516.010, RSMo 1986; *Johnston v. Bates*, 778 S.W.2d 357, 361 (Mo.App.1989). Pinewoods claims that W.R. Gibson failed to satisfy any of the prescribed elements. However, the trial court found, and this court holds, that W.R. Gibson has met its burden on each of the five elements.

■ Pinewoods asserts that W.R. Gibson did not have actual or constructive possession of the property for the prescribed period. It relies upon the fact that W.R. Gibson did not own or have legal title to the building until December 29, 1977, the date that Rockhill Savings & Loan conveyed the building to W.R. Gibson through a bill of sale. "Actual possession consists of the present ability to control the land and the intent to exclude others from taking possession." *Green*, 797 S.W.2d at 768. The keys to determining whether possession can be termed "actual" are the nature and location of the property together with the uses to which it can be put. *A. Charles*

*Bussen Trust v. Kertz*, 723 S.W.2d 922, 928 (Mo.App.1987). In the instant case, a building was erected on the property in question. Both the plans for the building and its location were approved by an agent of W.R. Gibson. It is not the possession of the building that is in dispute, it is the possession of the land upon which the building was erected. Rockhill Savings & Loan occupied the building pursuant to a lease it entered into with W.R. Gibson. W.R. Gibson's leasing of the disputed property was an exercise of its dominion and control, sufficient to prove actual possession in the instant case.

Pinewoods also denies that W.R. Gibson's possession was hostile. Pinewoods relies upon testimony given by Norman Collins, W.R. Gibson's engineer, as to the intent of W.R. Gibson "to have the edge of the building located exactly on the west and south property lines of the small triangular piece of ground." Pinewoods also stresses the intent, as evidenced by W.R. Gibson's request for the zoning variance, that the building be of a temporary nature. The actual building, however, was permanent and never considered to be a temporary structure. Pinewoods also points out that Mr. Gibson conducted negotiations with Mr. Kempf, Pinewoods predecessor in title, for the purchase of an 18–foot strip of land which included the 2 × 12 foot parcel that is the subject of this dispute. These negotiations took place over a period of years and continued as late as 1986.

■ "Hostility does not require ill will or malevolence, but is simply an assertion of ownership adverse to that of the true owner and all others; an occupation with an intent to own and not merely a possession conditioned on the superior claim of another." *Schaumburg v. Heafey*, 650 S.W.2d 697, 698 (Mo.App.1983). Exclusive possession and use of the land carries with it the presumption that such use is adverse in the absence of positive proof to the contrary. *Id.* at 699. It is irrelevant that the true boundary line was not known; an intent to take the property from its true owner is unnecessary to prove hostility. *A. Charles Bussen Trust*, 723 S.W.2d at 929.

In *Krell v. Davidson*, 694 S.W.2d 774 (Mo.App.1985), the parties disputed ownership of a three-foot strip of land. The Krells knew that there was some dispute over the boundary, even offering to purchase the disputed strip. *Id.* at 777. The appellate court upheld the trial court's finding that the Krells were entitled to a portion of the disputed strip by adverse possession. *Id.* at 778. The court in *Krell* discussed *State ex rel. Edie v. Shain,* 348 Mo. 119, 152 S.W.2d 174 (1941), and recited the law regarding the element of hostility, stating:

> In *State v. Shain* the court said at 152 S.W.2d page 176[4], among other things, that a claim "must be a hostile claim, one that is in opposition to, and cannot be reconciled with, the rights of the true owner, whether they be known or unknown. In short, the determining factor is not what the encroaching owner knew about the true boundary line, but what he intended to unequivocally claim was his boundary line," quoting *Bell v. Barrett,* 76 S.W.2d 394, 396[2, 3] (Mo.1934).

The court in *Shain* also said on 152 S.W.2d page 177[5–8]:

> One may have such an intent in the case of property actually belonging to another, because he intentionally wants to take it away from the owner. But he may also have this intent because he is mistaken as to the facts of legal ownership.

*Id.* at 777.

W.R. Gibson intended to occupy the land and make use of the disputed footage. The building erected in 1974 was a permanent building. W.R. Gibson leased the building to a succession of tenants and obtained a second variance in 1978, after expiration of the initial variance. These factors show hostility. The hostility requirement for adverse possession has been satisfied.

■ Pinewoods argues that W.R. Gibson's possession of the property was not "open and notorious." It cites *Teson v. Vasquez,* 561 S.W.2d 119 (Mo.App.1977), for the definition of open and notorious. To show that the claimant's occupancy was open and notorious, that occupancy must be conspicuous, widely recognized and a matter of common knowledge. *Id.* at 127. The claimant must show an occupancy that is so well recognized as to be inconsistent and harmful to the true owner's rights. *Elliott v. West,* 665 S.W.2d 683, 691 (Mo. App.1984). The requisite knowledge or notice of the claimant's adverse use has been held to mean knowledge which could be acquired upon reasonable inquiry. *Green,* 797 S.W.2d at 768.

It is difficult to imagine a more open and notorious use of the property in question than to have a building erected upon it for all the world, including the record owner, to see. The building sat on Mr. Kempf's property, a fact which could easily have been ascertained. W.R. Gibson has met its burden on this element.

Pinewoods next contention is that W.R. Gibson's occupancy of the land was not exclusive. Rockhill Savings & Loan owned the building sitting on the disputed property until December, 1977. Pinewoods concludes that W.R. Gibson had exclusive possession for only eight and one-half years prior to the institution of the lawsuit, dating from December 29, 1977. It also claims that under *Teson,* Rockhill Savings & Loan's tenancy cannot be tacked to W.R. Gibson's period of exclusive possession. *Teson,* 561 S.W.2d at 119.

Rockhill Savings & Loan built the structure on the disputed property pursuant to a lease with W.R. Gibson. The building was placed with the advice and consent of a W.R. Gibson employee. W.R. Gibson purported to rent to Rockhill Savings & Loan that section of disputed property on which the building stood. The lease of land and the collection of rentals thereon are indisputably affirmative acts of ownership. *A. Charles Bussen Trust,* 723 S.W.2d at 928.

■ Furthermore, reference to *Teson,* provides the grounds for tacking in this case if such be necessary. The rule for tacking expressed in *Teson* is that, "Generally, one may not be vicariously vested with title by adverse possession as a result of possession by another, though where there is the requisite relationship between the

parties, tacking of possession is allowed." *Teson,* 561 S.W.2d at 127. The court in *Teson* makes reference to *Crispen v. Hannavan,* 50 Mo. 536 (1872), on this point. In *Crispen,* the concept of privity is explored. The court acknowledges that holding land independently of previous possessors cannot tack possession, but that "[t]here must be a privity of grant or descent, or some judicial or other proceeding that shall connect the possessions, so that the latter shall apparently hold by right of the former." *Id.* at 549. Proof of such connection is not confined to deeds, nor even to written instruments. *Id.* Rockhill Savings & Loan was sufficiently connected to W.R. Gibson so as to allow the latter to tack its possession to that of the former. The element of exclusivity is satisfied for the necessary period of years to establish continuous possession. Thus, this court holds that W.R. Gibson has met its burden of proof on all of the five required elements for adverse possession.

### ZONING

Preliminarily, W.R. Gibson claims that resolution of the adverse possession issue in its favor necessarily resolves the zoning issue because removal of the building will not benefit Pinewoods. W.R. Gibson contends that the trial court did not have jurisdiction to consider the zoning issue as Pinewoods did not have standing and that review of the zoning board's decision was improper because it was not appealed within thirty days.

In *Pinewoods I,* this court addressed the issue of Pinewoods' standing to sue. *Pinewoods,* 783 S.W.2d at 480. This court settled the question of standing stating:

Although a private citizen who suffers no special or peculiar injury from maintenance of a zoning law violation different from that suffered by the public at large may not maintain an action to enjoin the violation, an adjoining, confronting or nearby property owner is entitled to assert, without further proof of special damages, the violation of the zoning ordinance. *Lee v. Osage Ridge Winery,* 727 S.W.2d 218, 221–22 (Mo.App.1987). *Id.*

Thus, W.R. Gibson's assertion, that some showing of special damages is necessary for Pinewoods to have standing, is in error. Pinewoods has standing under the rule in *Lee* as an adjoining property owner. W.R. Gibson's other claim, that the review of the Board's decision was out of time, is also in error. It is not the merits of the Board's decision to grant a variance that is at issue here, but whether the 1978 variance had expired.

Having resolved these preliminary matters in favor of the trial court's jurisdiction, the central question presented by the variance will now be addressed. W.R. Gibson contends that the trial court erred in finding that the 1978 variance was temporary because substantial evidence established that the variance was permanent.

W.R. Gibson's first request for a variance was presented to the Board on January 21, 1974. The Board granted the variance, restricting it "to use of the property for the moveable structure to be occupied by the Savings and Loan office with the variance to terminate at such time as the property is no longer used for this purpose." After Rockhill Savings & Loan vacated the premises, W.R. Gibson received a letter informing him that the variance was no longer valid. W.R. Gibson applied for a second variance on September 21, 1978. The Board granted the variance and entered the following findings of fact:

W.R. Gibson appeared in person to explain that there was a necessity for relief from the minimum yard requirements and that a variance had previously been granted for this exact same relief which is being requested. An expiration date of 1979 was placed on this variance and Mr. Gibson is requesting that the original variance be extended for an additional three years until October 1, 1982. Additional discussion revealed that the building lot was too small to accommodate any type of structure other than the one presently existing on the building and that the adjoining lot is restricted by

subdivision restrictions designating the use of the property for a real estate office.

At the conclusion of the hearing the Board discussed and considered the matter at length and upon motion duly made, seconded and unanimously carried, the Board of Zoning and Adjustment granted a variance from the minimum yard requirements on the above described property. The Board felt that substantial hardship was present and that relief should be granted from the ordinance. The Board felt that in granting this application substantial justice was done and the spirit of the comprehensive zoning ordinance was carried out.

Because there is no time limitation on the variance, W.R. Gibson contends that it is a permanent variance. In support of its contention, W.R. Gibson directs attention to a memo received from Susan Van Patten, the Director of Community Development for Lee's Summit dated August 2, 1982, in which after a conversation with the city attorney, she opines that since there is no time limit contained in the Board's findings, the variance was permanent.

W.R. Gibson acknowledges that this issue is one of first impression in Missouri. The cases it cites from other jurisdictions are not on point, dealing generally with possible abuses of discretion if variances are not renewed.[1] It also cites *Appeal of Farrell & Desautels Inc.*, 135 Vt. 614, 383 A.2d 619, 621 (1978), for the proposition that "[c]onditions imposed by a zoning board must be expressed with sufficient clarity to give notice of the limitations on the use of the land, and cannot incorporate by reference statements made by an applicant at a hearing." The findings made by the Board in the instant case specifically include the statement that W.R. Gibson's request was for a three-year period of extension. This is not an incorporation by reference as prohibited by the Vermont court in *Farrell*. The findings, read as a whole, gave a three-year period of limitation to the variance.

The Board's order in the instant case granted the relief prayed for "by clear implication." *See State ex rel. Weinhardt v. Ladue Professional Bldg., Inc.*, 395 S.W.2d 316, 320 (Mo.App.1965). In *Weinhardt*, the court considered an order of the Board of Zoning Adjustment "in light of the principle that quasi-judicial bodies cannot be expected to phrase their orders in the precise terminology courts strive for." *Id.* So stating, the court construed the order in accordance with what was sought by the applicant for a variance. So too, in the instant case, what was sought is what was granted. Mr. Gibson's request was made a part of the Board's findings.

The memo from the Director of Community Development does not bar this result. Although a factor to be considered, the memo does not have the effect of barring any judicial review of the variance.

Pinewoods provides a useful parallel, citing *Waeckerle v. Board of Zoning Adjustment*, 525 S.W.2d 351 (Mo.App.1975), wherein it was contended that the trial court erred by failing to find that a variance had been granted when application was for a conditional use permit. In upholding the trial court, this court stressed that the appellant's application was for a conditional use permit and not for a variance, concluding that as there was no application for or presentation during public hearing of a variance or grant of a variance, the trial court could not have been said to have erred. *Id.* at 357–58. In the instant case there was no application made for a permanent variance. W.R. Gibson's request was for a temporary variance. It was not error for the trial court to find that a temporary variance had been granted and that the variance had expired.

 W.R. Gibson also contends that the doctrine of laches applies to and bars Pinewoods' action as Pinewoods failed to object to the variance within a reasonable term after its termination. "The question of laches, being a question of fact, is to be

---

1. *Blum v. Board of Zoning & Appeals*, 8 Misc.2d 403, 166 N.Y.S.2d 32 (1957); *Davies v. Zoning Hearing Bd.*, 61 Pa.Commw. 594, 435 A.2d 276 (1981); *Jones v. Zoning Bd. of Adjustment*, 423 Pa. 416, 224 A.2d 205 (1966).

determined from all of the evidence and the circumstances adduced at trial." *Schaeffer v. Moore,* 262 S.W.2d 854, 859 (Mo.1953).

The doctrine of laches requires not only that there be an unreasonable delay in the assertion of its rights by a party but also that the other party suffers a legal detriment from such delay. *Scheble v. Missouri Clean Water Comm'n,* 734 S.W.2d 541, 560 (Mo.App.1987). The record does not demonstrate that W.R. Gibson was thus prejudiced. Upon a determination that laches is not a bar to action by Pinewoods since W.R. Gibson did not suffer any legal detriment, it is not necessary to determine whether, in the application of laches, it is permissible to tack Mr. Kempf's inaction to Pinewoods' ownership.

The judgment of the trial court is affirmed in all respects.

All concur.