**Y.W.C.A. OF GREATER KANSAS CITY, INC., et al., Appellants,**

v.

**DISMAS HOUSE OF KANSAS CITY, Respondent.**

**No. WD 47730.**

Missouri Court of Appeals,
Western District.

Feb. 8, 1994.

Hibberd V.B. Kline, III, Charles D. Horner, Sally B. Surridge, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, for appellants.

Kathryn M. Coonrod, Thomas R. Larson, Watson, Ess, Marshall & Enggas, Kansas City, for respondent.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

Y.W.C.A. of Greater Kansas City, Inc. (Y.W.C.A.), a Missouri not-for-profit corporation, J.E. Dunn Construction Company (Dunn), Southwestern Bell Telephone Company (Southwestern Bell), and The Ozark National Life Insurance Company (Ozark) appeal the order dismissing their Petition for Declaratory Judgment which sought judicial declaration that the contract agreed to by Dismas House of Kansas City (Dismas House) and the Federal Bureau of Prisons effectively provides that Dismas House will operate a "penal or detention center" at the 921 Cherry address and, thereby, violates the two year conditional use permit issued to Dismas House by the Kansas City Board of Zoning Adjustment (BZA), to operate a "halfway house for ex-offenders" at the 921 Cherry address. Appellants are owners of adjacent property to the 921 Cherry address. The circuit court's order dismissing appellants' petition for injunctive declaratory relief is reversed, and the cause is remanded with directions.

The structure located at 921 Cherry Street, Kansas City, Missouri, is located in a portion of downtown Kansas City zoned 3Cb (intermediate business, transitional). Adjacent landowners include appellant Y.W.C.A., which owns and operates a child day care center at 1000 Charlotte located less than 500 feet from the 921 Cherry Street address. The Y.W.C.A. facility is licensed to care for 102 infants, toddler, and pre-school aged children. Appellants Southwestern Bell and Ozark are Missouri corporations owning and occupying property adjacent to, or in close proximity to 921 Cherry Street. Respondent Dismas House operates a community based treatment center (halfway house) pursuant to contract with the Federal Bureau of Prisons at the 921 Cherry Street address.

On May 12, 1992, the BZA granted Dismas House a two-year conditional use permit to operate a "halfway house for ex-offenders" at the 921 Cherry Street address pursuant to § 39.212(B)(4) of the Kansas City Code. On June 11, 1992, the appellants, except for Y.W.C.A. petitioned BZA for rehearing regarding the issuance of the conditional use permit, and on July 17, 1992, BZA determined that it lacked jurisdiction to conduct a rehearing after granting the conditional use permit.

Appellants filed their Petition for Declaratory Judgment on August 28, 1992. Appellants' petition did not seek to contest the two-year conditional use permit granted by BZA to Dismas House to operate a "halfway house for ex-offenders" at 921 Cherry. The petition asserted that Dismas House intends to operate a facility that would constitute a "penal or detention center" as defined in § 39.213(B)(9) of the Kansas City Code and exceed the authority granted by the conditional use permit issued pursuant to § 39.-212(B)(4) of the Code. Appellants asserted in their petition that under § 39.213(B)(9) BZA can authorize operation of a penal or detention center in district zones RA, M–1, and M–2 only, and BZA can not authorize the location of a penal or detention center within one thousand feet of a "day care facility" such as that operated by Y.W.C.A. within five hundred feet of the 921 Cherry Street address. Dismas House concurred that a "penal or detention center" can not be authorized or operated at the 921 Cherry Street address under the Kansas City Code, but contended that it has not operated such a facility at the location.

On November 2, 1992, Dismas House filed its Motion to Dismiss with accompanying suggestions. The motion asserted that appellants' exclusive remedy was to file a petition for writ of certiorari with the circuit court within thirty days of the BZA's decision thereby facilitating review of the decision by the circuit court. Dismas House claims that the BZA decision necessarily determined that Dismas House would operate as a halfway house at the 921 Cherry Street address and categorized appellants' Petition for Declaratory Judgment as a collateral attack upon the BZA grant of the two-year conditional use permit.

The trial court dismissed appellants' Petition for Declaratory Judgment on March 12, 1993, concurring with Dismas House and holding in its Order of Dismissal that Appellants' petition was a collateral attack upon the issuance of the permit by BZA rather than an attempt to prevent Dismas House from acting in excess of the authority granted by the permit and in violation of the Kansas City Code. Appellants appeal the court's order of dismissal.

Appellants assert three points on appeal. Appellants contend that (1) the trial court erred in holding that their exclusive remedy was to file a petition for certiorari in the circuit court to review the decision of the Board of Zoning Adjustment to grant the permit, asserting that they do not contest BZA's grant of authority but that they contest the use of the 921 Cherry Street property anticipated by the contract between Dismas House and the Federal Bureau of Prisons; (2) the contract between Dismas House and the Federal Bureau of Prisons effectively amends or alters the terms "halfway house" and "penal or detention center or facility" as used in the zoning ordinance, and any act to amend or alter the terms "halfway house" and "penal or detention center or facility" as used in the zoning ordinance is an illegal attempt to legislate and may be attacked collaterally by adjacent property owners; and (3) insufficient evidence existed for the trial court to determine that Dismas will use 921 Cherry Street as a "halfway house" rather than a "penal or detention center."

## I.

Appellants first contend that the trial court erred in dismissing their petition on the basis that their exclusive remedy was to file a petition for certiorari in the circuit court for review of the BZA's decision to grant the conditional use permit (permit) to Dismas House. Appellants assert that they are not challenging the merits of the decision of the BZA to grant the permit but rather seek an injunction to restrain Dismas House from using its property in a manner that violates the local zoning ordinance and the use authorized by the permit. Appellants also seek a declaratory judgment construing the provisions of sections 39.212(B)(4) and 39.-213(B)(9) of the Kansas City Code as they apply to the permit granted by the BZA. Specifically, appellants assert that Dismas House intends to allow federal pre-trial detainees and federal convicts to use the facility pursuant to a contract entered into between Dismas House and the Federal Bureau of Prisons. By allowing detainees and convicts

to utilize the facility, Dismas House would, in effect, be operating a "penal or detention center," rather than a "halfway house," in violation of the zoning ordinance and the permit. Both parties agree that the operation of a penal or detention center at the 921 Cherry Street location is prohibited by the local zoning ordinance.[1]

The trial court dismissed the appellants' petition for lack of jurisdiction on the basis that appellants' exclusive remedy was to file a petition for certiorari with the circuit court to review the decision of the BZA pursuant to section 89.110 RSMo.[2]

Section 89.110 provides, in pertinent part:

Any person ... aggrieved by any decision of the board of adjustment ... may present to the circuit court of the county or city in which the property affected is located a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty days after the filing of the decision. ...

Dismas argues that the trial court properly dismissed appellants' petition for injunctive and declaratory relief because appellants failed to seek review of the BZA's decision with the circuit court within thirty days as required by section 89.110.

In *Lee v. Osage Ridge Winery*, 727 S.W.2d 218, 223 (Mo.App.1987), the Eastern District recognized a property owner's right to directly sue another property owner for injunctive relief "upon a showing that special damage has been or will be suffered ... as a result of a violation of a particular zoning ordinance by another adjacent or nearby property owner." In *Lee*, private landowners brought suit for injunctive and declaratory relief against an adjacent property owner challenging the owner's use of its property as a violation of a local zoning ordinance. The offending landowner in *Lee* was a commercial

winery (Osage) who was being sued for marketing and selling wine composed of grapes not raised on the premises purportedly in violation of a local zoning ordinance.

The plaintiffs sought a declaratory judgment to the effect that Osage be required to "maintain, use and occupy its property in conformance with the ... zoning ordinance." *Id.* at 219. Osage filed a motion to dismiss which was based, in part, on the plaintiffs' failure to exhaust its administrative remedies and the trial court dismissed the action. On appeal, the court found that the plaintiffs were entitled to sue the property owner directly for injunctive and declaratory relief and were not required to exhaust their administrative remedies. *Id.* at 223.

In making its determination, the *Lee* court relied on *Evans v. Roth*, 356 Mo. 237, 201 S.W.2d 357 (1947). In *Evans*, the Missouri Supreme Court recognized that:

[A] private individual has the right to maintain an action to compel the owner of a building to make it conform to the zoning regulations of the municipality, and to restrain the [property] owner from using it for nonconforming purposes when the nonconforming use will result in a special damage to the plaintiff.

*Id.* at 361.

The defendants in *Evans* argued that the plaintiffs could not maintain their action to enjoin adjacent property owners from using their building in a particular manner because the plaintiffs had failed to seek review of the building inspector's decision by filing an appeal for review with the BZA or a writ of certiorari to the circuit court. *Id.* at 362. The court reversed and remanded the cause with instructions to grant the plaintiffs injunctive relief based, in part, on the court's finding that plaintiffs were not aggrieved by the decision but were challenging defendant's use of the property and, therefore, the plaintiffs were not required to obtain review by

---

1. Section 39.213(B)(9) of the Kansas City Code prohibits a penal or detention center to be located on property which is within certain restricted zones or within one thousand feet of a day care facility. Under this ordinance, a penal or detention center or facility includes a facility in which "persons accused or convicted of offenses are held in custody, confined or housed prior to or

during trial or for incarceration after trial and conviction."

2. Section 39.320 of the Kansas City Code is analogous to the relevant provisions of section 89.110 RSMo.

the BZA or circuit court before filing their action. *Id.* at 362–64.

In *Pinewoods Assoc. v. W.R. Gibson Dev. Co.*, 837 S.W.2d 8 (Mo.App.1992), one of the issues before this court was whether a property owner's use of his property was in compliance with local zoning laws after a variance had allegedly expired. Rejecting the appellant's argument that review of the zoning board's decision was improper because it was not appealed within thirty days, this court held that "[i]t is not the merits of the Board's decision to grant a variance that is at issue here, but whether the 1978 variance had expired." *Id.* at 13.

Dismas House argues that *Lee, Evans* and *Pinewoods* are distinguishable because those cases involved defendants who had actually been using the property in alleged violation of the local zoning requirements. Dismas House claims that since it is not yet using the 921 Cherry Street property, the court would have to declare the rights of the parties based upon "hypothetical or speculative facts."

■ Actual injury is not a prerequisite to bringing a declaratory judgment action. *Ferguson Police Officers Ass'n v. City of Ferguson*, 670 S.W.2d 921, 925 (Mo.App. 1984). "[O]ne of the main purposes of the [declaratory judgment] remedy is to resolve conflicts in legal rights before a loss occurs." *Id.* Moreover, "where a dispute as to legal rights is otherwise shown, a violation of those rights is not a precondition to the availability of declaratory adjudication." *Higday v. Nickolaus*, 469 S.W.2d 859, 863 (Mo.App. 1971).

■ In this case, the appellants have alleged that Dismas House has contractually obligated itself to operate a facility at 921 Cherry Street that is not a halfway house but rather is a penal or detention center. Although no copy of the contract between Dismas House and the Federal Bureau of Prisons is in the record, the record discloses that a contract presently exists between the two entities. The appellants also alleged that their "properties are in such close proximity to 921 Cherry Street that the use of that facility as a penal or detention center ... will

immediately and adversely affect both the value of each of the plaintiffs' properties and the present use and enjoyment of each of plaintiffs' properties by plaintiffs."

If the contract reveals the appellants' contention that Dismas House intends to operate a facility that constitutes a penal or detention center is correct, then such operation will result in a violation of the local ordinances, the permit, and the legal rights and interests of the appellants as adjacent and nearby property owners. As such, this court finds that the legal dispute that is before it on appeal is the result of a real and impending threat to the appellants' legally protectable interests that is neither "hypothetical" nor "speculative."

The appellants seek a judicial determination as to whether the local zoning ordinances and the permit authorize the operation of the facility that Dismas House intends to operate pursuant to the contract. Appellants are not challenging the decision of the BZA to grant the permit to operate a halfway house but rather challenge the intended use of Dismas House as a violation of the zoning ordinance and the permit. As such, section 89.110 does not apply to this action. Thus, there is no jurisdictional barrier to prevent the trial court from considering the merits of appellants' petition for injunctive and declaratory relief.

## II.

Appellants further contend that the trial court erred because any act of the BZA which alters or amends the meaning of the phrases "halfway house" and "penal or detention center or facility" or alters the restrictions of the zoning ordinance regarding the location of such facility is open to collateral attack to prohibit the property owner from violating the ordinance. Appellants assert that such action by the BZA is an illegal attempt at legislation by an administrative body, is void and has no authority.

■ BZA has no legislative power to amend or repeal an ordinance and, as such, issuance of a permit that does not conform with the city code confers no rights to violate the code. *Davis v. J.C. Nichols Co.*, 761

S.W.2d 735, 739 (Mo.App.1988). An order issued by the BZA that is void as beyond the authority of the BZA may be attacked directly or collaterally. *Id.*

 In this case, however, there is no evidence in the record to indicate that the action taken by the BZA was beyond its jurisdiction or in any way violated the city code. The permit granted by the BZA to Dismas House simply allowed a halfway house for ex-offenders subject to restrictions.[3] Operating a halfway house at the 921 Cherry Street location is a permissible use under the city code. Even if the trial court determined on remand that Dismas House actually intended to operate a facility that would constitute a "penal or detention center," such violation is no indication that the BZA violated the city code since it only authorized the operation of a halfway house.

### III.

Finally, appellants contend the trial court erred in determining that it lacked jurisdiction because the court had no evidence upon which to base its finding that the BZA had determined the activities that Dismas House intended to conduct on the property constituted a "halfway house" rather than a "penal or detention center."

Dismas House asserts that the trial court properly dismissed the petition for lack of jurisdiction on the basis that the appellants' exclusive remedy was to file a writ of certiorari with the circuit court rather than on the basis of insufficient evidence. Dismas House further asserts that "[i]t was sufficient for the court's purposes, that the BZA had granted Dismas House a [permit], that appellants sought review of that decision and that appellants had failed to comply with the statutory review process."

In sustaining Dismas House's motion to dismiss, the trial court determined it had no subject matter jurisdiction because the "plaintiffs exclusive remedy was to file a petition for certiorari in the circuit court to review the decision by the Board of Zoning Adjustment within the time allowed by statute."[4]

In making its determination, it is evident that the trial court construed the appellants' petition for declaratory judgment as an appeal for review of the BZA's decision to grant Dismas House a conditional use permit rather than as a separate action for declaratory relief. The trial court did not lack jurisdiction to consider the merits of the appellants' action for the reasons noted in Point I.

Nothing in the record, other than the disputed assertions of the parties, indicates the true nature of the intended activities to be conducted by Dismas House at 921 Cherry Street or whether there was sufficient information regarding the proposed activities presented to the BZA in order for it to make a determination as to whether those activities would comply with the permit and local zoning ordinances. The appellants assert that Dismas House, "through its testimony at the May 12, 1992, meeting" and pursuant to a contract between Dismas House and the Federal Bureau of Prisons, intends to use its facility for activities that would clearly violate the permit and local ordinances.

The record indicates that the appellants attempted to discover the contents of the contract between Dismas House and the Federal Bureau of Prisons but were apparently unsuccessful after the trial court sustained Dismas House's motion to stay discovery.

---

3. The permit granted to Dismas House by the BZA provides, in pertinent part:
 At its regularly scheduled meeting on May 12, 1992 the Board of Adjustment GRANTED a conditional use permit for a period of two years ... to allow a halfway house for ex-offenders subject to conditions....

4. The case cited by the court in its memorandum for support of its determination, *Westside Enterprises, Inc. v. City of Dexter,* 559 S.W.2d 638

(Mo.App.1977), is distinguishable from the instant case. In *Westside,* the plaintiff petitioned for a declaration as to the permissible uses of its property under a local zoning ordinance after the zoning commission and Board of Aldermen had denied plaintiff's application for a zoning change. The present case, however, involves neither an application for a zoning change, nor have the appellants challenged the validity or application of the ordinance to their property.

The dismissal of appellants' petition for injunctive and declaratory relief is reversed, and the cause is remanded for further proceedings to determine the actual intended and impending activities of Dismas House at the 921 Cherry Street location pursuant to the contract between Dismas and the Federal Bureau of Prisons.

All concur.